[Criminal No. 433.　Filed May 8, 1918.]

[172 Pac. 660.]

## STATE, Appellant, v. ARTHUR L. BEHRINGER, Respondent.

TELEGRAPHS AND TELEPHONES—OFFENSES—WIRE TAPPING—DICTOGRAPH. Penal Code of 1913, section 692, providing that every person who by means of any machine, instrument, or contrivance, or in any other manner, willfully and fraudulently reads, or attempts to read, any message or to learn the contents thereof while the same is being sent over any telegraph or telephone line, shall be punishable, does not apply to the act of secretly placing a dictograph over the transom of a room in a hotel for the purpose of learning the contents of a telephone message sent through a transmitter in the room, the room not being a receiving or sending office of a telegraph or telephone company, nor did the interception take place while the message was being sent over the line.

[As to the law of the telephone, see note in 10 Am. St. Rep. 128.]

APPEAL from a judgment of the Superior Court of the county of Maricopa. F. H. Lyman, Judge. Affirmed.

Mr. Wiley E. Jones, Attorney General, Mr. G. W. Harben and Mr. R. W. Kramer, Assistant Attorneys General, Mr. L. M. Laney, County Attorney, Mr. George J. Stoneman, Mr. W. L. Barnum, and Mr. E. S: Ives, for the State.

Messrs. Alexander & Christy and Messrs. Bullard & Jacobs, for Respondent.

ROSS, J.—The state appeals from an order sustaining a demurrer to the information against the respondent, and a judgment of dismissal.

It is not necessary to set out the information, as it is excepted to, not because of a defective statement of the facts charged, but because of the insufficiency of the facts, under any view of the law, to constitute a public offense. The conduct of the respondent, which it is charged constitutes a crime, consisted of his secretly placing a dictograph over the transom of room No. 400 of the Adams Hotel, situated in the city of Phoenix, in which was a telephone transmitter connected with the Mountain States Telephone & Telegraph Company's telephonic system, for the purpose of learning the contents of any message that the occupant of room No. 400 might send over said telephone line; and, to assure his hearing any such message, it is charged, respondent with a wire connected the dictograph with the earpiece thereof, which was located and used in another room occupied by respondent, and that in this manner he did learn, and attempt to learn, the contents of messages spoken into the telephone transmitter by the occupant of room 400.

The information is grounded upon section 692 of the Penal Code which reads as follows:

"Every person who, by means of any machine, instrument or contrivance, or in any other manner willfully and fraudulently reads, or attempts to read, any message, or to learn the contents thereof, while the same is being sent over any telegraph or telephone line, or willfully and fraudulently or clandestinely learns, or attempts to learn, the contents or meaning of any message while the same is in any telegraph or telephone office, or is being received thereat or sent therefrom, or who uses or attempts to use, or communicates to others any information so obtained, is punishable as provided in section 690."

This section defines three offenses differentiated from each other principally in the circumstance of time and place of commission. The first has to do with the interception of messages whilst in transmission, "whilst the same is being sent over the telegraph or telephone line." The *locus* of the second is the receiving and sending telegraph or telephone office. The third denounces the use or communication of the information obtained at either of the places and times mentioned in the first two.

The facts of this case must bring it within one of these definitions to constitute a public offense. The state insists, under the facts as pleaded, respondent is guilty of the offense of learning, or attempting to learn, the contents of the messages while they were being sent over the telephone line. It cannot be truthfully said that one listening to another speaking a message into a telephone transmitter is learning the message as it goes over the line. Such a one is learning the message while it is being sent, at the instant it is being taken up by the electric current, but before it starts on its journey over the wire. The word "sent" is used twice in section 692, but not in the same sense. The context shows it was not used to convey the same meaning in both instances. In the last use thereof, it is found in connection with the crime of learning the contents of a message while the same is being received at a telephone office or being sent therefrom.

In the first use, it is in connection with the crime of learning, or attempting to learn, the contents of the message whilst it is being sent over the telephone line. If the latter was intended to comprehend the sending of the message, that is, the speaking of it into the transmitter, then its repetition in the second definition was a vain thing. To give effect, as was evidently intended, the learning, or attempting to learn, the contents of the message "whilst it is being sent over the telephone line" must be construed to mean the interception of the message between the termini on the line by means of a machine, instrument, or contrivance, or in some other manner, and not the learning of the message as it is spoken into the transmitter of the telephone at the initial point, at the place of sending, the telephone office, for that is a separate offense. It was directed against what is commonly known as "wire tapping," defined by the Standard Dictionary as "the act or process of tapping a wire for the purpose of diverting the

current or securing or sending information." This process is effected by a machine, instrument, or contrivance attached to the wire over which the message is being sent, or over which it is traveling; and, inasmuch as some other way might be invented to intercept the electric current, the legislature provided against it by inserting "or in any other manner," meaning thereby that it should be unlawful to divert the current by the specific means named or any other, but it all has reference to what is known as "wire tapping."

Section 692, in its present form, first appeared in our laws in the revision of 1913. It is found in the Penal Code of 1887 as section 1013, and in the Penal Code of 1901 as section 598, but in these it only applied to telegraphic messages and telegraphic offices. It was first made to cover telephones and telephone offices in the revision of 1913, by inserting the two phrases, "or telephone line," "or telephone office," which had the effect of extending the terms of the statute so as to include persons who, under the same conditions and circumstances, learned, or attempted to learn, telephonic messages as, before the amendment, were necessary to constitute the offense of learning, or attempting to learn, a telegraphic message. Now, when it is considered how telegrams are made up and sent, it is too clear for argument that the acts denounced under the old law were the interception of the message as it traveled over the wire, or the learning, or attempting to learn, its contents at the receiving or sending office. It is not a telegraphic message until it is received at the telegraph office. Until it is delivered to the telegraph company, the duty of protecting its contents devolves upon the sender, and the same is true as to telephone messages. Section 689, Penal Code.

When the statute was originally adopted, we had no telephones. It was intended to protect the public's and the telegraph company's business from trespassers who would invade the secrecy of private telegraphic correspondence, and was admirably and comprehensively drawn for that purpose, but the legislature, in amending the original act to cover telephone messages, did not take into consideration the situations that have arisen by reason of the installment of telephones in private homes, in hotels, and business places, from which so many messages, in these later days, originate, and for that

reason perhaps the law was not extended to protect telephonic conversations in such places.

It is urged by the prosecution that under a liberal construction, which is not only authorized, but enjoined, in construing penal statutes (section 5, Penal Code), section 692 would cover the acts alleged in the information. If by a "liberal construction" it is meant that the courts can extend the meaning of the language used by the legislature to include all cognate or related acts to those actually condemned, the contention is plausible; but, as we view it, we are not permitted to go that far. If the letter of the law clearly excludes the state of facts propounded in the pleading, or does not reasonably include them, even though they be within the reason and policy of the legislation, the courts cannot, by implication or construction, declare a person charged with them guilty of a crime. In this information the facts alleged do not meet the conditions of the statute, either in letter or in spirit. The acts alleged do not constitute the crime of learning, or attempting to learn, the contents of a telephonic message while it is being sent over the line, for, as we have seen, from the context and history of this offense, it is clearly what is known as wire tapping. They do not constitute the crime of learning, or attempting to learn, the contents of a telephonic message at the receiving or sending office of the telephone company. These, together with the offense of using or communicating the information so obtained, are the only crimes defined by section 692. The facts alleged in the information fall far short of the facts the legislature has said in section 692 constitute a public offense.

"Constructive crimes—crimes built up by courts, with the aid of inference, implication, or strained interpretation—are repugnant to the spirit and letter of English and American criminal law." *Ex parte McNulty*, 77 Cal. 164, 11 Am. St. Rep. 257, 19 Pac. 237; Sutherland on Statutory Construction, sec. 521.

The conduct of respondent in placing the dictograph in room 400 and connecting it with his room so that he could hear conversations and learn the contents of messages transmitted by telephone from that room was most reprehensible, and it is to be regretted that the law does not reach him. But, as a matter of fact, respondent was a mere eavesdropper. His conduct, while more refined and ingenious than if he had

placed his ear to the keyhole of room 400 to learn what was being said therein, was no less contemptible. If his act had been connected with the sending or receiving office of the telephone company, it would fall within the terms of section 692, but, having been in connection with the room of a guest of a hotel in which was a telephone for private use, it does not fall within the terms of that statute. This room was not the receiving or sending office of the company. The respondent, by his device, was enabled to learn the contents of the message as it was spoken into the transmitter of the telephone at a time and place not mentioned in the law, nor was it while it was being sent over the telephone line, as the prosecution would have it.

We conclude, with the learned trial judge, that the information does not state facts sufficient to constitute a public offense.

The judgment is affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J. (Dissenting).—I am of the opinion that the facts set forth in the information and briefly stated in the opinion of the majority of the court clearly constitute a criminal offense within the spirit of section 692 of the Penal Code of 1913, as denounced by the clause of said statute reading as follows:

"Every person who, by means of any machine, instrument or contrivance . . . willfully and fraudulently reads, or attempts to read, any message, or [attempts] to learn the contents thereof, while the same is being sent over any . . . telephone line . . . is punishable as provided in section 690."

The mere fact that the machine, instrument, or contrivance used, the dictograph and its attachments, was so used as to intercept the message whilst being sent between the point of its origin, the sender's vocal chords and the sound receiver, and before the contents of the message actually passed on to the telephone line, but was in the act of so passing through the air from the vocal chords of the sender to the apparatus for receiving and transmitting the same when intercepted, was, for that reason, no less in spirit a tapping of the telephone line than would the act of attaching physically a tapping wire to the telephone line at any point between the transmitter end

and delivering end of the telephone line. The gist of the offense denounced is the willful and fraudulent reading, or attempt to read or to learn, the contents of the message being sent whilst so being sent, by means of the use of any kind of machine, instrument, or contrivance to accomplish that purpose.

The evident purpose of the statute is to protect the persons using the wire for their business affairs from intermeddlers, and thereby preserve secrecy if they desire. The public interest demands that private persons using public service conveniences in their business affairs have the right to preserve secrecy. If the public service company through its servants, agents, or employees who have an opportunity to learn the contents of messages disclose the same, that is another matter, but if intermeddlers unconnected with the telephone company intercept private messages wrongfully, the public interests suffer.

Whatever construction other courts have placed upon statutes of other states, like or unlike our said statute, whereby such other statutes have been held as only meaning the physical tapping of wires, I do not agree to such decisions as correct interpretation when applied to our statute *supra*. The strict literal, technical construction only will permit of holding that the facts charged constitute no offense under the said statute. True, the statute does not say in words that the offense includes the reading or learning of the contents of a message by means of a machine, instrument, or contrivance that will intercept the message at the instant the same starts toward the telephone wire, yet the message is as certainly being sent over a telephone wire from the time the words constituting the message are separately spoken by the sender as when the message is being sent after the words have reached the transmitter device of the telephone. For these reasons, I cannot agree with the order affirming the judgment. On the other hand, I am of the opinion the broader construction of the statute is the clear legislative intention, and the judgment should be reversed and the cause remanded.