[Criminal No. 506. Filed April 4, 1921.]

[196 Pac. 673.]

# NICHAN MARTIN, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—REVIEW HAD ON THE RECORD, ALTHOUGH NO BRIEF FILED NOR ERRORS ASSIGNED.—Although a case was submitted for decision on the record, and no counsel appeared for defendant, and no brief was filed, nor errors assigned, the Supreme Court must, under Penal Code of 1913, section 1171, review all decisions, opinions, orders, charges, rulings, actions, and proceedings appearing of record, and grant a new trial to defendant, if any fundamental error appears.

2. HOMICIDE — EVIDENCE HELD SUFFICIENT TO IDENTIFY THE DECEASED.—In a prosecution for murder, evidence *held* to make absolute and certain the identity of the deceased.

3. HOMICIDE—EVIDENCE HELD TO SUSTAIN VERDICT OF FIRST DEGREE MURDER.—In a prosecution for murder, circumstantial evidence *held* to warrant the jury's verdict of murder in the first degree.

APPEAL from a judgment of the Superior Court of the County of Yavapai. John J. Sweeney, Judge. Affirmed.

Mr. J. E. Russell, for Appellant.

The Attorney General of Arizona and Mr. Neil C. Clark, County Attorney, for the State.

BAKER, J.—The defendant, Nichan Martin, was informed against for the murder of Arthur De Steunder. The trial jury found him guilty of murder in the first degree, and fixed his punishment at death. His motion for a new trial having been overruled, and sentence of death having been pronounced upon him, the judgment has been brought to this court for review.

Although the defendant was tried and convicted and sentenced in the month of April, 1920, the case was not docketed in this court until March 4, 1921.

On March 30, 1921, the Attorney General moved that the case be submitted to the court for decision on the record. This was done. There has been no appearance of counsel in behalf of the defendant in this court; neither is there any brief on file in his behalf, nor any assignment of errors. The bare record is submitted. The statute, however, irrespective of these matters, makes it our duty, upon an appeal of this character, to "review all decisions, opinions, orders, charges, rulings, actions and proceedings made or had in the cause in the court from which the appeal is taken, appearing in the record" (Penal Code, § 1171), and if any fundamental error is found to exist in the proceedings to grant a new trial to the defendant.

In the performance of this duty the facts of this shocking case, as they appear in the record of the trial, have been most carefully considered and scrutinized. We shall make no attempt to recite the facts in detail. They are entirely too voluminous. They will be set forth in a most general way, and no further than is absolutely necessary to a just disposition of the rights of the defendant and the prosecution. We have been greatly impeded in the discharge of the duty imposed by the statute because of the absence from the record of the various exhibits introduced in evidence, making it nearly impossible to give an exact and connected statement of the facts.

On October 4, 1919, the dead body of Arthur De Steunder, partly incinerated, was discovered at a point near the roadside, between Seligman and Kingman, Arizona, and about twenty-five or thirty miles west of Seligman, and within the confines of Yavapai county. The surrounding circumstances, and the condition of the body, indicated, beyond all reasonable doubt, that the deceased had come to his death by being shot in the back by a 38-caliber pistol, and

his body dragged from the place where an automobile had been standing to a point where the burning was done, a distance of about 150 feet. The tracks of the automobile showed that the vehicle was being driven westerly. Undoubtedly the burning of the body was done in an effort to conceal the commission of the crime. The deceased was a soldier and had been in the service of the Canadian government overseas in France, where he was wounded in the right arm in one of the engagements with the Huns. At the time of his death he was dressed in the uniform of a Canadian soldier, which was not entirely consumed by the fire, and which carried insignia indicating that, when in the service of his country, he belonged to the 20th Canadian Battalion of Infantry. A ring upon his finger bore his initials; cuff buttons, tie clasp, and a wristlet, proven to belong to the deceased, were found upon his body, or in the ashes of the fire. The bullet with which the wound was inflicted upon him was extracted from the charred clothing on the front part of the person, having passed through the body. The identity of the body as being Arthur De Steunder was made absolute and certain, not only by the clothing and articles found upon the body or in the ashes of the fire, but by the positive testimony of his brother, John Emil De Steunder, who viewed the remains.

The proof points unerringly to the defendant as the perpetrator of the crime. It was proven, beyond all doubt, that the defendant and the deceased were traveling to California in an automobile. They were seen together at several places on the road. There is evidence to the effect that at one or two places the two men quarreled or disputed about money matters; the deceased claiming that the defendant was indebted to him, and the defendant denying it, with some angry expressions. They were last seen to-

gether on the night of October 3, 1919, at Ash Fork, Arizona, not very far east of the place of the homicide. The road leading to California lay west from Ash Fork, and passed through Kingman, still farther west, and it was near the side of this road that the dead body of Arthur De Steunder was found. Late on the evening of the day of the homicide (October 4th) the defendant appeared at Kingman in the automobile, in which he and the deceased had been traveling. He was alone. He spent the night there at the hotel, and registered under a false name, and changed his apparel from a soldier's uniform, which he had been wearing, to a civilian suit, and told the hotel proprietor that he had driven the automobile all the way from Rhode Island without anyone being with him. Early the next morning he left Kingman in the automobile, going west towards California. According to his account he went to Los Angeles, thence to Fresno, and thence to Yettem, in Tulare county, California, where he was arrested. Blood stains were found on different parts of the automobile. A small muslin bag, saturated with blood, was found under the carpet in the bed of the vehicle. Large spots of human blood stains were found on the defendant's trousers, which he said he had worn while passing through Arizona, but had discarded because they had become greasy and dirty from travel. The automobile bore evidence of having been recently cleaned and scraped, as if an effort was made to do away with the blood stains. A 38-caliber pistol was found in the belongings of the defendant. At the time it contained three unexploded cartridges. The bullets taken from the pistol corresponded with the bullet found in the charred clothing of the deceased. Several articles belonging to the deceased were found in the possession of the defendant, or in a house where he had placed them after arriving at Yettem, includ-

ing the army discharge papers of the deceased, a suitcase, clothing, belt, buckle, tag, etc.

Upon being returned to this state for trial, and while en route, the defendant escaped from the officers, but was recaptured. He admits that he was traveling with the deceased, and gave quite a lengthy account of their journey from Chicago, Illinois, to Arizona, including occurrences, incidents, etc., many of which were in direct conflict with the testimony introduced by the prosecution. He claims that at some town in Arizona, which he was unable to name, or even locate, the deceased went away in an automobile with a stranger whom he called "Jimmy," and that he never saw him afterwards. "Jimmy" was not produced as a witness, nor did anyone testify to the existence of such a person. He sought to account for the blood stains on his trousers by saying that he had cut his finger and that he had wiped his hands upon his trousers. He was unable to explain, or at least gave no explanation, why the automobile was stained with blood. He denied that it was. As to the discharge papers, he claims that the deceased gave them to him to keep. The story of the defendant is absolutely inconsistent with the facts proven by the prosecution in numerous instances and was plainly a fabrication—a cooked-up story to meet the exigencies of the occasion.

The law undoubtedly is that a conviction of murder may be predicated upon circumstantial evidence. That Arthur De Steunder was foully murdered by the defendant, and the body partly incinerated for the purpose of concealing the crime, does not admit of the slightest doubt, upon the proof in the case, and we think that the jury was warranted by the circumstantial evidence in finding the defendant guilty of murder in the first degree. No plausible view of the facts can be suggested in support of the proposition

that the verdict is unsupported by the evidence or that justice requires a new trial, so far as the facts are concerned.

The information in the case is in regular form and sufficiently charges the defendant with the crime of murder. We have carefully examined all the instructions, and we find that they correctly, declare the law; by them the jury was fully instructed as to every ingredient of the crime and as to every phase of the case. All of the proceedings have been regular and formal, and there appears to be nothing in the case that would justify this court in interfering with the execution of the judgment and sentence. We are satisfied the defendant was fairly tried and justly convicted, and the judgment is therefore affirmed.

It is further ordered that judgment be entered by this court fixing the time when the original sentence of death shall be executed, as required by section 1177 of the Penal Code of Arizona of 1913.

ROSS, C. J., and McALISTER, J., concur.