[Civil No. 4251. Filed November 25, 1940.]

[107 Pac. (2d) 377.]

GEORGE M. HILL, Appellant, v. COUNTY OF GILA, State of Arizona, a Body Politic and Corporate, Appellee.

Mr. D. E. Rienhardt and Mr. George M. Hill, for Appellant.

Mr. Edward Y. Weeks, County Attorney, for Appellee.

Mr. Ben C. Hill, *Amicus Curiae.*

ROSS, C. J.—On March 12, 1938, the plaintiff, George M. Hill, offered to purchase of the county treasurer of Gila County the state's tax certificate of purchase, covering lot 5, block 77, Globe Townsite, and tendered in payment thereof the sum of $415.36 plus $216.44, being interest at 10 per cent. per annum on the amount for which the property sold to the state, to date of tender. At the same time he tendered such treasurer the additional sum of $1,530.56, the full amount of subsequent taxes, *without any interest,* and fifty cents for making the assignment. The treasurer refused to accept the tender and demanded the additional sum of $395.07, being interest at 10 per cent. per annum on subsequent taxes, as a condition precedent to the assignment of the certificate.

Thereafter plaintiff paid the county treasurer the sum of $2,557.43, being the total of the above sums, for the state's certificate of purchase and subsequent taxes, but he paid the $395.07 under protest, claiming it was in excess of the amount the law required him to pay. This action was brought against Gila County to recover such sum, and whether plaintiff should succeed involves the construction of certain parts of the revenue laws of the state. The lower court was of the opinion plaintiff was not entitled to recover, and this appeal is prosecuted from a judgment to that effect.

The question is controlled by sections 15–58, chapter 103, Laws of 1931, and amendments thereto, prescribing the procedure for the collection of delinquent

taxes. Section 20 thereof provides that the county treasurer shall sell, at public sale, real property of his county for delinquent taxes and charges and, in the absence of bids for the property by private parties, that it shall be struck off to the state "for the amount of such taxes, interest, penalties, and charges" and that "a certificate of purchase, as provided in other cases" shall issue to the state. It was under the provisions of this section that the state, in 1932, acquired the certificate in question.

Section 25 provides that when the property is sold to the state the rate of interest on redemption shall be in all cases 10 per cent. per annum and in other cases the interest shall be at the rate agreed upon by the purchaser, but in no event more than 15 per cent.

Section 29 provides that the certificate of purchase shall recite the amount of all taxes, interest, penalties and charges for which the property was sold, together with the rate of interest payable thereon in order to redeem, and further provides that the purchaser, whether the state or a person, may assign the certificate and all rights thereunder.

Section 30 makes it the duty of the county treasurer, when the holder of a tax certificate desires "to pay any subsequent taxes," to "endorse thereon the amount of such subsequent taxes paid."

Section 31 makes it the duty of the county treasurer, when property is sold to the state, to sell and assign the certificate to any person who will pay him "the whole amount then due under such certificate, including interest, penalties and charges" and "in addition pay the whole amount of any subsequent taxes assessed . . . and the further sum of fifty cents for making each such assignment."

Plaintiff's contention is that the phrase in section 31, "the whole amount of any subsequent taxes assessed," means without any interest, penalties or

charges and that he was relieved thereby from paying anything except the taxes, interest, penalties and charges of the certificate assigned to him and any subsequent taxes.

The county attorney contends that other provisions of the revenue laws show that it was not intended by such language to exempt the assignee of the state's certificate from paying interest on delinquent taxes but that such assignee is required to pay such interest just as any other investor in tax certificates is required to do.

We think the phrase "subsequent taxes" as used in sections 30 and 31 means the same thing. Accepting that as true, we turn to section 37 and find that when the owner, his agent, assignee or attorney, or any person having a legal or equitable claim in the taxed property, or who has purchased the property for taxes on a different date and received a certificate of purchase wants to redeem, he may do so

"by payment to the county treasurer of the amount for which such real property was sold, with interest thereon at the rate specified in the certificate of purchase, together with the amount of all taxes accruing on such real estate after the sale and paid by the purchaser and endorsed on such certificate of purchase, *with interest on such subsequent taxes* at the rate of ten per cent per annum; provided, that all statutory fees paid by the purchaser or his assigns in connection with such certificate shall be added to the amount payable on redemption and shall bear interest at the rate of interest specified in such certificate except as changed by this act." (Italics ours.)

The phrase "subsequent taxes" is, in effect, construed to mean "all taxes accruing . . . after the sale when paid by the purchaser and endorsed on such certificate of purchase," and it is provided that interest shall be paid by the redemptioner on such sums, together with the statutory fees. If any of the persons

entitled to redeem should exercise that right under this section, he would be compelled to pay plaintiff 10 per cent. on any taxes paid by plaintiff as assignee of the state, or at the rate specified in the certificate if sold to a private investor. It is quite apparent that the provisions of section 37 apply to redemptioners from the state as well as from private investors, for it states that the rate of interest shall be as stated in chapter 103 and not as stated in chapter 46, Laws of 1929. It provides that a redemptioner from a sale to the state shall pay 10 per cent. interest. Then, if plaintiff may collect interest from the owner on each delinquency from the date of any such delinquency, from and including 1932 to the time of his offer to purchase, it would seem that it was the intention that he should pay to the state such interest, otherwise he would be profiting at the expense of the state and not the owner, since the owner, it seems, must pay interest on his delinquencies at all events.

This conclusion seems inevitable when we take into consideration all the provisions of the law concerning the collection of delinquent taxes. Section 17 has this all-inclusive provision:

"All taxes shall bear interest from the time of delinquency at the rate of ten per cent per annum until paid, and a fraction of a month shall be counted as a whole month."

Under chapter 103, the duty of the delinquent property to pay taxes does not cease upon a sale thereunder, whether it be to a private investor or to the state. Each year thereafter it is required to be assessed to the owner until title passes to a purchaser or his assignee, or to the state or its assignee, and each year after the taxes become delinquent they are entered in the back tax book in separate columns "together with columns for *interest,* fees and other charges." (Italics ours.) Sections 16 and 17. Thereafter the

property is sold as provided in section 20, *supra,* and a certificate of purchase is issued to the buyer, whether it be a private person or the state.

 We take it that the holder of a certificate, under either section 30 or 31, may pay the delinquent taxes on the property and that the amount collectible is the amount reflected by the back tax book as taxes, "together with . . . interest, fees and other charges" (sec. 17, *supra*) and, if it goes to sale, charges incident thereto. It would be the duty of the county treasurer under section 30 to collect from the holder of a certificate, when it is exhibited to him, whatever the back tax book reflected.

It seems to us that the phrases "subsequent taxes" and "the amount of such subsequent taxes," as used in section 30, and the phrase "the whole amount of any subsequent taxes," as found in section 31, are used generically to cover taxes, interest, penalties and charges, and not to designate the taxes only.

 It appears from plaintiff's complaint that after the sale of the property in 1932 to the state for delinquent taxes, it was not again advertised and sold for subsequent taxes, or if it was it is not so alleged in the complaint. This, however, would not relieve the property from paying the taxes, interest and charges as reflected by the back tax book.

 It is suggested that before a redemptioner could be required to pay interest on subsequent taxes as provided in section 37, *supra,* the taxes must have been endorsed by the treasurer on the certificate of purchase as paid. We think it is not the endorsement of such payment on the certificate that is important but that it is the payment that is important. The endorsement of payments is required to comply with section 23 as to the keeping of a correct record of the sales.

At tax sales the property is struck off to the state only when there is no offer from private investors. The state is authorized to accept title, not for the purpose of profiting therefrom but to take care of a temporary situation and to insure the payment by the owner of the taxes that are paid by all property owners. If we give to the statutes the construction the plaintiff contends for, we have to ascribe to the legislature an intention to favor the private investor who purchases a tax certificate from the state over a purchaser who buys the tax certificate at public sale from the county treasurer. We can see no reason for such favoritism, but all considerations would seem to require that these private investors be treated alike and we think that is what the legislature intended. If we construe ''subsequent taxes,'' as used in sections 30, 31 and 37, to mean only taxes and not interest, we will have to disregard this rule. We think

''The several provisions of the statute should be construed together in the light of the general purpose and object of the act and so as to give effect to the main intent and purpose of the legislature as therein expressed. If possible, a statute should be so construed as to render it a consistent and harmonious whole; if different portions seem to conflict, they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory. In other words, a statute must receive such construction as will make all its parts harmonize with each other, and render them consistent with its general scope and object.'' 25 R. C. L. 1007, sec. 247.

Under this rule of construction, all of the provisions of chapter 103 will be harmonized and, we think, the intent of the legislature followed.

The reference in *Biles* v. *Robey*, 43 Ariz. 276, 30 Pac. (2d) 841, 844, to the word ''taxes'' and its meaning when used alone ''with no additions or qualifying lan-

guage," in no way conflicts with the meaning of the word in the phrase "subsequent taxes" as we have construed these words.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.