134 P.2d 541

**STATE v. GILMORE et al.**

No. 4696.

Supreme Court of New Mexico.

Nov. 17, 1942.

Rehearing Denied March 18, 1943.

J. B. Newell, of Las Cruces, for appellant Gilmore.

O. O. Askren, of Roswell, for appellant Mersefelder.

Edward P. Chase, Atty. Gen., and George H. Hunker, Jr., Asst. Atty. Gen., for appellee.

BRICE, Chief Justice.

The appellants (defendants) were indicted, tried, convicted and sentenced to the state penitentiary upon a charge of obtaining property exceeding the value of twenty dollars from Herman Pieper "by making false pretenses and with intent to defraud the said H. Pieper." Upon request of appellants the following "Bill of Particulars" was furnished to them by the district attorney:

"Comes now the State of New Mexico by its District Attorney in and for the Ninth Judicial District and for a bill of particulars requested by the defendant, Sam Mersefelder, states:

"That the defendants, Mart Gilmore and Sam Mersefelder with a unity in purpose and design, caused a contract to be entered into between the defendant, Mary Gilmore, and H. Pieper for the purchase and sale of the ranch, improvements and livestock owned by the said H. Pieper. That neither of the defendants at any time intended to comply with the contract and that by false representation induced the said H. Pieper to part with the possession of the livestock and thereafter sold the same and converted the proceeds of said sale to their own use."

From a careful reading of the testimony in this case we are unable to find any substantial evidence to support the conviction of the defendant Mersefelder. The attorney general confesses error as to him, because of this failure of proof.

On the 22nd day of April, 1941, one Herman Pieper and defendant Gilmore (hereinafter styled defendant) entered into a contract of purchase and sale whereby Pieper agreed to sell defendant certain real estate, 140 dry cows, heifers and bulls, and 90 cows with calves and certain grazing leases. The land and leases were valued at $16,000 and the cattle at $11,332.50, a total consideration of $27,332.50. It was specifically provided that the cattle would not be sold unless the land was sold with them. Arrangements were made by the defendant to borrow $9,000 from an insurance company, to be secured by a mortgage on the land after it was conveyed to him. This money was to be paid to Pieper when received from the insurance company. The balance of $18,332.50 was to be paid by defendant to Pieper at the time of closing the trade.

Pieper's deed to the land, transfer of the grazing leases, and bill of sale to the cattle, were placed in escrow in the First National Bank of Portales, to be delivered to the defendant when he paid the $18,332.50.

Before the consummation of the sale defendant entered into an agreement with one Trimble, through defendant Mersefelder, for the sale to Trimble of a portion of the cattle for $9,640. Trimble's check for $7,640, payable to defendant and endorsed by him, was placed in the bank with the other escrow papers, and at the same time there was deposited with the escrow a bill of sale from defendant to Trimble for the cattle sold to him.

It was agreed that all these documents should remain in escrow until the transaction was closed by the payment of the consideration due to Pieper, except $9,000 thereof to secure which arrangements had been made by defendant to borrow from an insurance company by securing the loan with the land he had agreed to purchase.

On May 28, 1941, defendant stated that he was ready to close the transaction, and he and the others interested came to the office of one Sparks, who was acting as agent for Pieper, for the purpose of completing the trade.

The defendant had been paid $2,000 by defendant Mersefelder on the cattle transaction with Trimble, who was Mersefelder's associate in their purchase. The balance due Pieper (except the $9,000 mentioned) was $10,692.50 after deducting Trimble's check. The defendant drew a check for this amount on the Clovis National Bank, which he represented would be paid upon presentation. After the delivery of this check Pieper released the cattle which defendant had sold to Trimble, and received Trimble's check for $7,355 in lieu of the check for $7,640, because of the loss of five head of the cattle Trimble had bought. At the time of the delivery of the cattle to Trimble, Pieper gave him a bill of sale therefor, and the cattle were moved by Trimble into Texas.

On May 28, 1941, the day the parties met ostensibly to close the transaction, defendant deposited $1,900 in the Clovis National Bank, and it may be inferred that this was the money received by him from Mersefelder, less $100; but at the time the transaction was to be closed his balance in the Clovis National Bank was $7.66. He had neither credit nor deposit with said bank by which the check could be honored.

The reasonable inference is that at the time he entered into the contract he never had the means or credit with which to carry out the agreement, and at the time of the closing of the trade he gave the fraudulent check for the purpose of securing possession of the cattle for delivery to Trimble and Mersefelder. He could not get possession of the cattle without paying the consideration, and it was by this fraudulent means that he secured them for delivery to Trimble, and thereby could make $2,000 in cash, which he secretly retained. His representation that the $10,692.50

check would be paid by the Clovis National Bank, or, as he stated, it would "get the money," was a fraudulent representation of an existing fact known by him to be false, and was intended to induce Pieper, and did so induce him, to part with his cattle. We are of the opinion that the judgment is supported by substantial evidence. State v. Tanner, 22 N.M. 493, 164 P. 821, L.R.A.1917E, 849.

At the close of the State's testimony defendant moved for an instructed verdict upon the following grounds:

"1st: That the State has wholly failed to prove the allegations of the indictment. It has proved a fatal variance, in that the witness testified that his property was a part only of the cattle which were sold under the transaction, which cannot be the basis of this indictment.

"2nd: For the reason that the State has wholly failed to prove by any evidence here that Martin Gilmore received any property of any kind or character by virtue of any representations, false or otherwise; the State having proved, by introducing the check or draft and by the witness Mr. Trimble and by the witness H. Pieper, that he executed a bill of sale for every head of cattle that was removed from his property, and he accepted this check, Defendant's Exhibit A, in the sum of $7,355 in full payment for all of the property belonging to Mr. Pieper, and this being an independent transaction, Gilmore then being cut out of the deal entirely, his check disregarded any bill of sale delivered, and he didn't not deliver a bill of sale."

This motion was overruled and the case was submitted to the jury upon the State's testimony.

Defendant asserts that the trial court erred in refusing to instruct the jury to return a verdict of not guilty, "for the reason there was insufficient evidence to support the allegations of the indictment." He states that "the court will readily see from reading the transcript of evidence that there is no substantial evidence of the conspiracy on the part of both defendants jointly to defraud Pieper." There are three answers to this contention.

First: Section 6 of this Court's Rule XV has not been complied with. It is as follows:

"Assertion of fact must be accompanied by references to the transcript showing a finding or proof of it. Otherwise the court may disregard the fact.

"A contention that a verdict, judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the transcript. Such a statement will be taken as complete unless the opposite party shall call attention in like manner to other evidence bearing upon the proposition."

Appellant has not stated the substance of any evidence on the question, and

therefore the question cannot be considered. Rhodes v. First Nat. Bank, 35 N. M. 167, 290 P. 743.

Second: There is substantial evidence to support the verdict of the jury.

■■ Third: The contention is, not that defendant is innocent of the charge, but that there is a variance between the allegation in the bill of particulars and proof. But advantage cannot be taken of this after verdict (State v. Russell, 37 N.M. 131, 19 P.2d 742), nor at all unless it operated to mislead the defendant to his injury, and no such claim is made. State v. Earley, 119 Kan. 446, 239 P. 981.

It is urged that unless there is evidence to convict both defendants, then that defendant must be discharged, upon the theory that he and another are charged with conspiracy to defraud.

■■ Defendant seems to assume that the charge against him is conspiracy to defraud, instead of a consummation of such conspiracy. They are entirely different crimes. "Conspiracy alleged may fail in proof, as well as proved conspiracy may fail in execution. Failure, then, to prove the existence of a conspiracy alleged to have been formed to commit a particular character of fraud cannot affect the right, regardless of conspiracy, to prove that fraud of the same character was actually committed. This is well within settled principles of the doctrine of conspiracy."

Kelly v. United States, 6 Cir., 258 F. 392, 395.

If the defendants had been charged only with conspiracy to defraud Pieper, then the acquittal of Mersefelder would necessarily result in the discharge of defendant. People v. Kuland, 266 N.Y. 1, 193 N. E. 439, 97 A.L.R. 1311, and annotation at page 1312; Berry v. State, 202 Ind. 294, 165 N.E. 61, 173 N.E. 705, 72 A.L.R. 1177 and annotation beginning at page 1180. But this is not the charge in the information.

■ It is asserted that the bill of particular charges that the purchase and sale contract was brought about by a prior conspiracy to commit the crime charged, and that no conspiracy was proved; that because of this variance the defendant should be discharged. This question was not raised in the district court, and cannot be considered by us. Thomas v. Johns, 35 N. M. 240, 294 P. 327.

The judgment of the district court is affirmed as to the defendant Gilmore; and reversed as to the defendant Mersefelder with instructions to the district court to dismiss said cause as to him. It is so ordered.

SADLER, MABRY, and BICKLEY, JJ., concur.

ZINN, J., did not participate.