279 P.2d 898

STATE of Arizona, Appellee,

v.

Ben B. HOFFMAN, Appellant.

No. 1051.

Supreme Court of Arizona.

Feb. 4, 1955.

Rehearing Denied March 8, 1955.

Paul H. Primock, Phoenix, for appellant.

Ross F. Jones, Atty. Gen., William T. Birmingham, Asst. Atty. Gen., and Morris K. Udall, County Atty., Tucson, for appellee.

LA PRADE, Chief Justice.

This appeal is from a judgment finding the defendant, Ben Hoffman, guilty of selling his assets with the intent to defraud his creditors, in violation of section 43–2603, A.C.A.1939, which reads as follows:

"Every debtor who fraudulently removes his property or effects out of this state, or fraudulently sells, conveys, assigns or conceals his property, with intent to defraud, hinder or delay his creditors of their rights, claims or demands is punishable by imprisonment in the county jail not exceeding six (6) months, or by fine not exceeding five thousand dollars ($5,000), or by both."

The evidence showed that Hoffman purchased grocery merchandise from sellers throughout the country and sold the merchandise without intending to make payment; that these sellers failed to check the credit status of the defendant; that all of his purchases were made by collect telephone call; that some of the goods purchased by Hoffman were sold to local grocery stores and merchant peddlers in Tucson; and that defendant kept no business records and in most instances sold for cash. The number of creditors who had not received payment were numerous. On completion of the trial the jury found the defendant guilty on all of the five counts as charged. On motion a new trial was granted on the first two counts. The appellant makes ten assignments of error.

Appellant contends first that the trial court erred in refusing to grant a new trial on all counts or directing a verdict for the defendant. To support this assignment appellant argues that the state failed to prove each allegation contained in the information. Each count of the information specified a particular creditor allegedly

defrauded and each count also stated that the defendant had defrauded "in sundry" other creditors. These other creditors were specified in a bill of particulars. At the trial it was not proved that each and every creditor so listed in the bill of particulars had been defrauded by the defendant. The jury's finding of guilt was based on evidence that many of the creditors, if not all, had been defrauded. Appellant contends that for the state to prevail it must prove that each individual creditor named in the bill of particulars was in fact defrauded. This is incorrect. Variance between the bill of particulars and the proof will not constitute grounds for a new trial unless it is shown that the defendant was misled and his right to a fair trial substantially prejudiced. State v. Gilmore, 1942, 47 N.M. 59, 134 P.2d 541. The defendant was clearly apprised of the nature of the charges and the identical creditors whom he was found guilty of having defrauded. That the defendant was not proved to have defrauded all the listed creditors does not lessen his guilt for those he did defraud. Violation of the statute does not hinge on the number of those defrauded. The variance here was inconsequential and as such it does not constitute substantial error under our statute, section 44–748, A.C.A.1939.

■ Appellant next contends that the verdict was contrary to the evidence in that there was no evidence that the defendant intended to defraud his creditors at the time he sold the merchandise. It was shown that the defendant repeated his actions often, buying goods, selling them and making no payments to his creditors. Whether the defendant was an honest businessman who had intended to pay his creditors but was then suffering financial misfortune or whether the defendant made these sales with no intention to pay for the goods, was a question for the jury to resolve.

At the time of the trial seventeen creditors were pressing their claims. As to all these creditors the state neglected to show the exact indebtedness owing to each, but as to ten of them the evidence showed that the defendant had purchased from them goods to the extent of $11,609.95 and had paid them $747.80. Some creditors had sued and attached, by which suits $425 had been realized. From the testimony of a deputy sheriff it appears that he found some property under previous attachment, but was not able to find any property of the defendant that might be attached. A fair inference from all the testimony is that at the time the prosecution was instituted the defendant had disposed of all the goods, wares and merchandise that he had purchased.

Indicative of the defendant's modus operandi are the following examples. On June 18, 1953, defendant sold thirty dozen brooms at $8 a dozen which he purchased on June 3d at a cost price ranging from $13.49 a dozen to $17.23 a dozen; he sold tea at $8 a case which cost him $13 a case; and he sold salmon at $9 a case which cost him $11 a case. From one creditor defend-

ant had purchased 1,254 boxes of figs of the purchase value of $2,955.85 on which indebtedness defendant had paid nothing. From another creditor defendant purchased $1,431.20 of coffee and tea which he disposed of and paid nothing on the account. From a candy manufacturer he purchased $1,095 of candy and paid only $96 on account.

Criminal intent is often elusive and difficult to illustrate by specific acts. In Gates v. United States, 10 Cir., 1941, 122 F.2d 571, at page 575, the court stated:

"* * * fraudulent intent, as a mental element of crime, is often difficult to prove by direct evidence. In many cases it must be inferred from acts of the parties, and inferences may arise from a combination of acts, even though each act or instance, standing by itself, may seem unimportant."

We hold that the jury could properly infer intent to defraud from the evidence submitted.

The defendant assigns as error the admission into evidence of bills representing indebtedness to his creditors, the contention being that these documents were copies of originals and not the best evidence of his indebtedness.

These bills were offered in evidence by the state under our business records statute, section 23–314, A.C.A.1939, as amended, A.C.A.Supp.1952, § 23–314. To comply with this section it was necessary that a custodian testify as to "* * * its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event * * *." The custodian offered by the state was a representative of the Better Business Bureau in Tucson who had received authority, by letter, to represent the various creditors. The witness had no actual knowledge of the method in which the bills were prepared. In objecting to this evidence the defendant stated that no foundation had been laid for the admission of these documents and that the witness could not qualify as a custodian. With this contention the trial court agreed and granted a continuance to enable the state to obtain proper custodians from the various creditors. When these witnesses arrived to testify the defendant again objected to the admission of the documents on the ground that no foundation had been laid. This time the objection referred to the interval of time between the date at which the original bills were prepared and the date the copies being offered were made. The witnesses stated that the copies were true copies of originals which had been made contemporaneously with the transaction and the trial court admitted them in evidence.

Here on appeal the defendant now states that his objection of "no foundation" not only raised the competency of the custodian and the time at which the bills had been prepared but also the best evidence

rule. The defendant states that the copies were improperly admitted until it was shown that the originals were inaccessible. In the absence of a proper objection at the trial the validity of this point may not be considered for the first time on appeal. State v. Upton, 1946, 65 Ariz. 93, 174 P.2d 622. The purpose of an objection is to permit the trial court to rectify possible error, Federico v. Hancock, 1882, 1 Ariz. 511, 25 P. 650, and to enable the opposition to obviate the objection if possible. Rush v. French, 1874, 1 Ariz. 99, 25 P. 816. From reading the transcript it is apparent that neither the trial court nor the state were given notice that the appellant intended to raise the best evidence rule. The objection of "no foundation" is too broad to now argue the best evidence rule without this basis being specified below. Hartzell v. United States, 8 Cir., 1934, 72 F.2d 569.

Appellant next contends that the trial court abused its discretion by granting the state a seven-day continuance to permit it to obtain the proper custodians of the documents offered in evidence. Appellant states that the attendant delay denied the defendant his right to a speedy trial and that the jury was influenced by prejudicial newspaper stories commenting on the expense borne by the county in bringing these witnesses to Arizona.

The trial court's right to grant a continuance is discretionary, section 44–1603, A.C.A.1939. The continuance granted here was not a reward for incompetency. The state had prepared its case by obtaining a custodian—that counsel was mistaken in his choice of a custodian does not necessarily mean he was derelict. We hold that the trial court did not abuse its discretion in granting the state the continuance for the purpose of obtaining necessary witnesses for the trial. People v. O'Shaughnessy, 1933, 135 Cal.App. 104, 26 P.2d 847. Whether a speedy trial has been denied will vary with the facts of the case. We find no arbitrary or capricious delay in the trial of Hoffman. The prosecution was carried through as soon as the dictates of justice would permit. State v. Beckwith, 1944, 222 Ind. 618, 57 N.E.2d 193. The only prejudice contended to have been created by the delay is that during this period the jury might have read news articles which appellant states were unfavorable to the defense. This proposition raises a perennial question in criminal law. Publicity always presents a latent threat to a fair trial, yet it must be recognized that the public has a legitimate right to be informed on matters of general interest. The point at which these two desirable ends may conflict is not subject to doctrinaire definition but must vary with the facts. There was no showing that the jury members were in fact influenced by the publicity, nor that the publicity created an abnormal or unusual situation. In the absence of such showing it must be assumed that the jury obeyed the admonition of the trial judge and retained an open mind until all evidence had been submitted.

■ The next contention of appellant is that the trial court erred in permitting the state to amend the information at the close of the trial. The counts of the information alleged that the defendant did "sell, convey, assign and conceal his assets and property, all in violation of section 43–2603." When amended the information charged that the defendant did "sell his assets and property, all in violation of section 43–2603." The state had deleted the allegation that the defendant had "conveyed, assigned or concealed" his assets and property. Appellant asserts that allowing this amendment was error because it altered the substantial elements of the crime.

Various methods of violating the statute are enumerated by its provisions. A party may sell, convey, assign or conceal his assets with intent to defraud, but each method of disposal need not be proved in every case to obtain a conviction, one method is sufficient. Every possible technique of defrauding creditors under the statute is not a criminal element of every case. The amendment permitted here was proper under our statute, section 44–748(2), A.C.A.1939, which reads in part:

"The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such variance, to conform to the evidence."

■ Appellant next contends that the court erred by its instruction to the jury. The instruction read in part:

"I instruct you that under the statute that this defendant is charged with, you must find beyond a reasonable doubt the following things before you can return a verdict of guilty. First, that the defendant on or about the dates alleged was legally indebted to some persons; secondly, that being so indebted he fraudulently sold certain of his property and third that he made the sale or sales with the specific intent to defraud, hinder or delay his creditors of their rights or claims or demands."

Appellant contends that this charge meant that the jury could have found the defendant indebted to creditors other than those named in the information or bill of particulars, and that under the phrasing of the instruction, which said "some persons", would be compelled to find the defendant guilty. Appellant states that if the defendant were indebted to a John Doe, a party not found in the information or the bill of particulars, this party could have been considered by the jury as one of the defendant's "some creditors" and have led to a conviction. Appellant contends that the creditors must be specified as those found in the bill of particulars or information. Such a constrained construction of the instruction is less than persuasive. The only evidence submitted at the trial as to the indebtedness of the defendant was in relation to those persons allegedly defrauded. No evidence was before the jury as to other debts of the

defendant, and we fail to see the relevancy of the hypothetical John Doe. It cannot be seriously urged that when the court said "some creditors" the jury was led to *imagine* other possible creditors of the defendant. This contention is without merit.

 Appellant also objects to that part of the instruction which reads:

"* * * that he made the sale or sales with the specific intent to defraud, hinder or delay his creditors * * *."

Appellant argues that the defendant was charged with defrauding "all" his creditors, and that this instruction is insufficient in that it does not state that the defendant must be proved to have defrauded *all* the creditors he might have. His requested instruction which was refused reads:

"All includes everything and excludes nothing.

"There is no distinction between creditors whose debts have arisen from sales of merchandise and creditors to whom indebtedness was created by the debtor for other reasons.

"Unless the state of Arizona has proven to you beyond a reasonable doubt that the defendant has defrauded all of his creditors, including those listed in the information and on the bill of particulars, you are instructed to bring in a verdict of not guilty."

The trial court properly refused to give this instruction. The information stated that the defendant defrauded "all said cred-itors". Said creditors refers to those named in the information or bill of particulars. Under the instruction offered by the appellant the jury would be required to bring in a verdict of not guilty if it were shown that Hoffman paid any debt, even his light or telephone bill. Such would be a patent absurdity which we refuse to entertain.

 Appellant next argues that the trial court erred in failing to specifically state that the defendant could be found guilty or not guilty on each count separately. Appellant states that since the jury was not specifically so instructed they thought that they must find the defendant guilty or not guilty on all the counts as a group rather than individually. The meaning and sufficiency of an instruction must be drawn from the instructions read in their entirety. State v. Parsons, 1950, 70 Ariz. 399, 222 P.2d 637. At one point in the charge the court stated:

"You will be furnished with ten forms of verdict. There will be two verdicts to each count. On each count there will be a verdict, one of guilty and one of not guilty. I am not going to go through and read each one but they are separated and itemized as to each count. You can examine them and I am sure they will be self-explanatory to you."

We find no indication that the jury was misled by the charge into the error asserted by appellant.

Appellant's next argument is that the trial court erred in not granting the defendant a new trial on all counts of the information. A new trial was granted on the first two counts and denied as to the rest. Appellant's theory is that the new trial was granted because there had been error in the admission of evidence, and contends that if this erroneously admitted evidence was sufficient ground for a new trial as to the first two counts that it was equally a valid ground for a new trial as to all counts.

The assumption of this argument is that the trial court granted a new trial on the first two counts because there was an error in the admission of evidence. Since the grounds for the new trial are not stated by the trial court we assume that the grounds are those found in the appellant's motion for a new trial. In that motion a variety of grounds are stated, error in the admission of evidence is merely one. It may be that the trial court granted a new trial on the theory that insufficient evidence had been submitted on the first two counts—this ground is contained in the motion. In such event there would be no error in the admission of evidence but merely an insufficient amount as to the first two counts. Since the reasons for the trial court's granting a new trial on the first two counts and denying it as to the other counts is not stated, we must assume, unless the contrary is shown to be the case, that the trial court based its decision on reasons which would be consistent with a denial of a new trial on the remaining counts.

Appellant's last contention is that he was twice convicted of the same crime. Counts three and four of the information were worded identically. The bill of particulars disclosed that count three referred to the sale by defendant of 50 cases of pink salmon and that count four referred to the sale of 24 cases of red salmon. Both kinds of salmon had been sold to the same buyer at the same time and place.

The defendant was found guilty of both counts and sentenced to six months on each, the sentences to run concurrently. The defendant argues that the facts upon which these two counts are based constitute only one offense rather than two, a contention with which we agree.

The case of Colson v. Aderhold, D.C., N.D.Ga.1933, 5 F.Supp. 111, 113, presented a similar question. There the defendant was convicted of robbing the United States mail from its custodian in violation of 18 U.S.C.A. § 320. Eight of the eleven counts in the indictment differed only by alleging the theft of a different bag of mail. The defendant was found guilty of all counts. The court phrased the question in the following language:

"Would one who robbed * * * a person having custody of mail consisting of only ten letters, be guilty of one crime and subject to one penalty of twenty-five years' imprisonment, or

would he be guilty of ten crimes carrying penalties of two hundred and fifty years?"

The court in that case ruled that each bag which had been stolen did not constitute a different offense under the applicable statute. Eight of the counts were declared void.

Under the statute here, section 43–2603, supra, the crime of which the defendant was accused was selling his assets with intent to defraud. The crime was the sale, not the number of objects sold at the same time or place. We hold that count number four and the sentence entered thereon is void. Since each count is separate the invalidity of one will not affect those which remain. See section 44–725a, A.C.A.1939, as amended, A.C.A.Supp.1952, § 44–725a. As to counts three and five the judgment is affirmed.

UDALL, WINDES and PHELPS, JJ., concur.

STRUCKMEYER, Justice (dissenting).

The judgment of conviction should be set aside for the reason that an essential element of the offense is absent. The evidence affirmatively discloses that the merchandise was resold in the manner as is customary in the food brokerage business. There is no intimation whatsoever that the resales were in any way *fraudulent*. It is not every debtor who removes, sells, conveys, assigns or conceals with intent to defraud but it is:

"Every debtor who *fraudulently* removes his property or effects out of this state, or *fraudulently* sells, conveys, assigns or conceals his property, with intent to defraud, hinder or delay his creditors of their rights, claims or demands is punishable by imprisonment in the county jail * * *." (Emphasis supplied.) Sec. 43–2603, A.C.A.1939.

The statute provides the elements of the offense and is the yardstick against which the unlawfulness of the act must be measured. The adverb "fraudulently" modifies the verb "sells". It restricts the sales to those consummated in a particular manner and categorizes the sales as those which partake of or are characterized by fraud.

The meaning of "fraud" is certain and readily ascertainable. It is defined by Webster's New International Dictionary, Second Edition, Unabridged, as being—

"1. Quality of being deceitful; deceit; trickery.

"2. The means by which deceit is practiced; artifice; trick. * * *."

The adverb "fraudulently" is not defined but the adjective "fraudulent" is:

"1. Using fraud; tricky; deceitful.

"2. Characterized by, founded on, or proceeding from, fraud; of the nature of fraud.

"3. Obtained or performed by artifice. * * *".

Since the intent is specifically set forth in the statute, the qualifying adverb, as twice used therein, must mean that "deceit", "artifice" or "trickery" accompany the sale or it can have no meaning whatsoever. A construction that deletes an essential element from the statute is an obvious absurdity and is a clear case of judicial tailoring to manufacture a criminal offense. It violates fundamental statutory interpretation consistently adhered to by this court that the various parts and provisions of a statute must be so harmonized as to make them consistent and sensible and to render every word operative, rather than idle or nugatory. Powers v. Isley, 66 Ariz. 94, 183 P.2d 880; Western Coal & Mining Co. v. Hilvert, 63 Ariz. 171, 160 P.2d 331; Hill v. Gila County, 56 Ariz. 317, 107 P.2d 377; Ellery v. State, 42 Ariz. 79, 22 P.2d 838.

To affirm the conviction, as the majority has done, where the facts do not constitute the offense prohibited by statute, is to catagenesize this court's previous specific utterances:

"* * * While liberal construction of criminal statutes is enjoined upon us by Sec. 43–102, A.C.A.1939, we are not permitted under the holding in State v. Behringer, 19 Ariz. 502, 172 P. 660, 661, to '* * * extend the meaning of the language used by the Legislature to include all cognate or related acts to those actually condemned * * *'; so by the same

reasoning we are not permitted to ignore an element designated by the legislature to be essential to the commission of a criminal offense." State v. Ferraro, 67 Ariz. 397, 198 P.2d 120, 123.

If the majority believe that the word "fraudulently" is susceptible of a different construction than that of trickery, deceit or artifice, then it is to be acknowledged that the statute is ambiguous.

"A statute, or any sentence, clause or word thereof is 'ambiguous' when it is capable of being understood by reasonably well-informed persons, in either of two or more senses." Thompson v. Akin, 81 Ill.App. 62.

Assuming but not conceding that the word "fraudulently" is ambiguous and is capable of being construed in other than its commonly understood and accepted meaning, then the construction of innocence must be preferred over that of guilt. In this state the penal statutes "are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice." Sec. 43–102, A.C.A.1939. This statute is word for word identical to California's and was undoubtedly taken from that state. It was early construed there in the following language:

"* * * While it is true the rule of the common law that penal statutes are to be strictly construed has been abrogated by the Code, which provides

that 'all its provisions are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice,' it is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arises out of a question of fact, or as to the true interpretation of words, or the construction of language used in a statute, and we think the least that can be admitted fairly by those who claim the application of section 1205 to judgments of this kind is that the intention of the legislature to make it applicable to such cases is not clearly and with certainty expressed in the language used. * * *" Ex parte Rosenheim, 83 Cal. 388, 391, 23 P. 372, 373.

The language quoted in this case has been repeatedly approved under a variety of circumstances:

"* * * 'When language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. In other words, criminal statutes will not be built up "by judicial grafting upon legislation * * * (I)t is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute." '

(People v. Ralph (1944), 24 Cal.2d 575, 581, 150 P.2d 401; People v. Valentine (1946), 28 Cal.2d 121, 143, 169 P.2d 1; see also In re McVickers (1946), 29 Cal.2d 264, 278, 176 P.2d 40; In re Bramble (1947), 31 Cal.2d 43, 51, 187 P.2d 411; People v. Chessman (1951), 38 Cal.2d 166, 182, 238 P.2d 1001; Ex parte Rosenheim (1890), 83 Cal. 388, 391, 23 P. 372; People v. Sayre (1937), 26 Cal.App. Supp.2d 757, 761, 70 P.2d 546.)" People v. Western Air Lines, 42 Cal. 2d 621, 268 P.2d 723, 744.

All of the texts and nearly every jurisdiction has approved language similar in effect to that used in United States v. Universal C. I. T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 229, 97 L.Ed. 260:

"* * * Not that penal statutes are not subject to the basic consideration that legislation like all other writings should be given, insofar as the language permits, a commonsensical meaning. But when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication."

Nor can the majority ignore their responsibility under the guise that the fail-

ure of proof of this essential element of the offense was not assigned as error. By statute, Section 44–2535(2) A.C.A. 1939, this court on appeal "may review the evidence whether its insufficiency is a ground of appeal or not." It is settled that this court will review the record to determine if there has been "fundamental error". State v. Romo, 66 Ariz. 174, 185 P.2d 757; Olson v. State, 36 Ariz. 294, 285 P. 282; Smith v. State, 23 Ariz. 469, 204 P. 1032; Martin v. State, 22 Ariz. 275, 196 P. 673, petition for rehearing denied 22 Ariz. 327, 197 P. 578.