643 P.2d 23

**The STATE of Arizona, Appellee,**

v.

**William Raymond WRIGHT, Leticia Teresa Wright, Appellants.**

**Nos. 2 CA–CR 2385, 2 CA–CR 2420.**

Court of Appeals of Arizona, Division 2.

Feb. 10, 1982.

Rehearing Denied March 10, 1982.

Review Denied March 30, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Barry J. Baker Sipe, Asst. Public Defender, Tucson, for appellant William Raymond Wright.

Thomas G. Kelly, III, Tucson, for appellant Leticia Teresa Wright.

## OPINION

HOWARD, Chief Judge.

The main issue in this case is whether the police violated A.R.S. § 13–3916 and the United States constitutional prohibition against unreasonable searches and seizures in their execution of a search warrant. The trial court held that they did not and refused to suppress the evidence.

Appellants, husband and wife, were charged with the unlawful possession of marijuana for sale. The trial of Leticia Wright was severed from that of her husband. After the denial of the motion to suppress, William Wright was found guilty by a jury for the lesser-included offense of unlawful possession of marijuana. Upon stipulation of the parties, Leticia Wright submitted the issue of her guilt or innocence to the trial judge based upon the evidence presented during her husband's trial. The trial judge found Leticia Wright guilty of a lesser-included offense of possession of marijuana, a misdemeanor, and sentenced her to two days in the county jail.

William Wright was placed on probation for three years and the trial court withheld designating the offense as a felony or misdemeanor pending termination of his probation.[1]

Around 5 p. m. on May 6, 1980, members of the Metropolitan Area Narcotics Squad went to appellants' residence to execute a search warrant. Some of the officers headed towards the front door and Officer Yanez drove his vehicle to the rear in order to prevent any escape. When he exited the vehicle he saw appellants at the kitchen window looking at him. He drew his revolver, identified himself as a police officer, and told them to freeze. At the time Officer Yanez was wearing a Metro Area jacket which was very bright orange and has two police department patches on the front. While appellants stood with their hands in the air, the other officers, not knowing Yanez was holding appellants, arrived at the

1. We shall comment on the legality of this later in the opinion.

front door, knocked very loudly and identified themselves and their purpose as required by A.R.S. § 13–3916. Officer Yanez heard the officers knock and announce, but he could not see them. Appellants did not say anything and after about ten seconds the officers at the front door knocked again. Appellants still did not say anything. After getting no response, the officers asked and received permission from their on-the-scene supervisor to break in and they did so.

Officer Yanez did not know appellants were the only ones in the house and drew his weapon in order to protect the officers going to the door. Officer Yanez testified that if appellants had said something like, "Come in. We can't come to the front door", he would have yelled to the officers to go in.

A.R.S. § 13–3916(B), provides in part:
"B. An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:
1. After notice of his authority and purpose, he receives no response within a reasonable time. . . ."

■ The "knock and announce" rule serves two basic purposes: protection of the individual's right to privacy in his home and reduction of the possibility of harm inherent in an unannounced entry. *People v. Webb*, 36 Cal.App.3d 460, 111 Cal.Rptr. 524 (1973); *Commonwealth v. DeMichel*, 442 Pa. 553, 277 A.2d 159 (1971) and see Annot. 70 A.L.R.3d 217 at 227 et seq. See also Annot. 21 A.L.R. Fed. 820. As was stated in *Commonwealth v. DeMichel*, supra:

" '. . . Regardless of how great the probable cause to believe a man guilty of a crime, *he must be given a reasonable opportunity to surrender his privacy voluntarily.*' [citation omitted] . . . Accordingly, even where the police duly announce their identity and purpose, forcible entry is still unreasonable and hence violative of the Fourth Amendment if the occupants of the premises sought to be entered and searched are not first given an opportunity to surrender the premises voluntarily. [citation omitted]" 277 A.2d at 163. (Emphasis in original)

■ The issue is whether appellants still had an opportunity to surrender the premises voluntarily even though they were standing with their hands in the air pursuant to Officer Yanez' command. We first note that the announcement here was made loudly enough so that it was fair to infer that anyone inside the house also heard the words. Cf. *United States v. Mendoza*, 433 F.2d 891 (5th Cir. 1970). There was no testimony here that they did not hear the announcement. Even though appellants had their hands in the air, we still believe that they had an opportunity to speak and voluntarily surrender the premises. Had they yelled something out to the officers at the door or to Officer Yanez, the entry could have been made without the necessity of breaking down the door.

■ Appellants also argue that the officers did not wait for a reasonable time before they broke the door down. What constitutes a reasonable time depends on the circumstances of each case. *State v. Bates*, 120 Ariz. 561, 587 P.2d 747 (1978); *State v. Dixon*, 125 Ariz. 442, 610 P.2d 76 (App.1980). Here, appellants were in plain view of Officer Yanez and had ample opportunity to say something before the door was broken down.

■ On our own motion we have raised the issue of the trial court's jurisdiction to place William Wright on probation for three years and withhold designation of the offense as a felony or misdemeanor. In *State v. Risher*, 117 Ariz. 587, 574 P.2d 453 (1978), the court held this could be done when the defendant was found guilty on an "open-end" offense (one which could be treated either as a misdemeanor or felony). The court in *Risher* based its decision on A.R.S. § 13–1657, which has since been repealed by the new criminal code. We no longer have open-ended offenses, and the classification of a crime as a felony or misdemeanor is regulated by A.R.S. § 13–105 (1978). In any event, perhaps due to Justice Holohan's incisive dissent in *Risher*, the

legislature has clearly delineated the trial court's powers.[2]

A.R.S. § 13–702(G) states:

"Notwithstanding any other provision of this title, if a person is convicted of any class 6 felony not involving the intentional or knowing infliction of serious physical injury or the use of a deadly weapon or a dangerous instrument and if the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that it would be unduly harsh to sentence the defendant for a felony, the court may enter judgment of conviction for a class 1 misdemeanor and make disposition accordingly . . . ."

From the above statutory language it is clear that the trial court can no longer delay the designation of the offense but must, when it enters a judgment of conviction, decide whether or not it will designate the offense a class 1 misdemeanor.

The order of the trial court placing William Wright on probation for three years and withholding designation of the offense is vacated and set aside, and the case of William Wright is remanded to the trial court for proceedings consistent with this opinion. In all other respects, the case is affirmed.

As for appellant Leticia Teresa Wright, the judgment and sentence is affirmed.

HATHAWAY and BIRDSALL, JJ., concur.

2. See case note, The Classification of an Open-End Offender on Probation, 21 Ariz.L.Rev., 163 (1979) for an illuminating discussion on *Risher*.