725 P.2d 505

**STATE of Arizona, Appellee,**

v.

**Christopher LIVANOS, Appellant.**

**No. 1 CA–CR 9530.**

Court of Appeals of Arizona,
Division 1, Department C.

July 15, 1986.

Reconsideration Denied Sept. 5, 1986.

14

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Ratner & Walsh by Kathleen Kelly Walsh, Phoenix, for appellant.

EUBANK, Presiding Judge.

Appellant was indicted on one count of theft, a class six felony, and forgery, a class four felony. He entered into a plea agreement in which he agreed to plead guilty to theft, a class six felony, and criminal simulation, a class six felony (open-ended). Part of the plea agreement stated, "restitution of economic loss to the victim will be required." Appellant was also advised that the maximum fine that could be imposed was $150,000. The parties stipulated that the sentences imposed would be served concurrently with each other and with a sentence previously imposed in CR–11450. Appellant was sentenced to the presumptive term of one year imprisonment on the theft offense and, on the criminal simulation charge, the trial judge told appellant that he was going to, "leave this open, an open designation on that as to whether it's a felony or a misdemeanor." He then suspended sentence and placed appellant on probation for three years and

told him that if he successfully completed the term of probation the offense would be designated a misdemeanor and he would only have one felony conviction on his record. On appeal, appellant raises the following issues:

    1. Did the trial court err in disqualifying appellant's expert witness?

    2. Did the trial court err in failing to grant appellant's motion to suppress certain statements?

    3. Was restitution properly imposed by Judge Coker?

While normally the first and second issues would be precluded by appellant's guilty plea from appellate review, since the issues might be raised on remand we will briefly discuss them.

## PRECLUSION OF HANDWRITING EXPERT

Appellant's first issue contends that the trial court erred in precluding a handwriting expert, Russell Petit, from testifying at trial.

The state moved to preclude appellant's proffered witness, Petit, from testifying on the basis that he was unqualified to testify as an expert in the field of questioned documents. The state argued that the witness's background was in graphology and that he did not have substantial training in questioned document analysis and that his practical experience was insufficient to justify having him testify. During a lengthy pretrial hearing on Petit's qualifications, it was brought out that he had never testified in a superior court in Arizona, that the last time he had testified in a superior court was in Indiana in 1969, that he belonged to an organization called World Association of Document Examiners, or W.A.D.A., whose admissions procedures were very informal, but that he was not certified by the American Board of Forensic Document Examiners. Mr. Petit spent a substantial amount of time working in the area of graphology, which was the study of handwriting to determine personality traits. After the hearing, the trial judge concluded that he simply didn't feel that Mr. Petit qualified as an expert in the area of handwriting analysis and precluded his testimony.

&#9646;&#9646;&#9646;  Competence to testify as an expert is a matter largely within the trial court's discretion and a clear abuse of discretion must be proven to warrant reversal. *State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983). Rule 702, Arizona Rules of Evidence; Udall & Livermore, *Arizona Law of Evidence 2d* § 22 (1982). The fact that a person may deal with a subject in such a manner that it makes him more knowledgeable than the average citizen does not necessarily make him such an expert that it is an abuse of discretion to refuse to allow him to testify. *State v. Seebold,* 111 Ariz. 423, 531 P.2d 1130 (1975).

&#9646;&#9646;&#9646;  In *People v. Tidwell,* 706 P.2d 438, 439 (Colo.App.1985), the court held that the trial court had not abused its discretion in refusing to allow the proffered defense witness to testify as a handwriting expert. The witness had knowledge of graphanalysis, had some experience in questioned document examination, but was not certified by the American Board of Document Examiners and had never been qualified as an expert witness. He was precluded by the trial judge from testifying as an expert in a forgery case. In *Carroll v. State,* 276 Ark. 160, 634 S.W.2d 99 (1982), the trial judge ruled that the defense witness did not qualify as a handwriting expert. The witness was a "certified grapho-analyst" whose training consisted of studying various mechanics of handwriting, including the slant, unusual markings in the strokes, pressure brought to bear on the paper, and other basics that made up handwriting. The witness had testified once as an expert in Iowa and "worked with" law enforcement officers in two Arkansas counties, but the cases had not gone to trial. 634 S.W.2d at 102. The court also noted, as did the court in *Tidwell,* that the proffered expert was not a member of the Academy of Forensic Sciences. The witness did testify, as did Petit, that he had read books on forensic document work, but the court held that his *"practical training and experience"* in the field of questioned document examination did not *"clearly"* qualify him

as an expert to testify about the authenticity of questioned documents. 634 S.W.2d at 102.

We find no evidence in this record to demonstrate that the trial court clearly abused its discretion in determining that Petit did not have the practical training and experience necessary to qualify him as an expert in the field of questioned documents examination. In our opinion, the trial judge did not abuse his discretion in precluding Petit from testifying.

## VOLUNTARINESS OF STATEMENTS

■ The second issue raised by appellant is that a statement he gave to police officers was involuntary and should have been suppressed. He argues that he voluntarily went to the police department in response to a request to give a handwriting sample because the officer told him that if he did not give the sample that the officer would get a court order. Therefore his statements were involuntary. He argues that the facts brought out at the hearing were sufficient to show that he was subjected to "custodial interrogation" and, because *Miranda* warnings were not given to him prior to the statements being made, the statements should have been suppressed.

The record shows that the appellant voluntarily went to the police station to give handwriting exemplars. While there, the officer simply told appellant that if appellant did not wish to give the exemplars he would get a court order to require him to give them. This would have been possible for the officer to do pursuant to A.R.S. § 13–3905.

It is clear that in order to be admissible, statements obtained while an accused is subject to custodial interrogation require a prior waiver of *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). A similar issue to the one here was raised in *State v. Carter*, 145 Ariz. 101, 105, 700 P.2d 488, 492 (1985), and rejected by our Supreme Court. In *Carter*, the suspect voluntarily accompanied the officers to the police station and was photographed and fingerprinted. When Carter asked what would happen to him if he refused to give his fingerprints, the officer explained that the police would probably seek a court order to obtain his fingerprints. The court found that the statements made by Carter while he was at the police station occurred at a time when he was not "in custody." We find *Carter* controlling here. The trial court did not abuse its discretion in determining that appellant's statements were made voluntarily.

## RESTITUTION

This brings us to the final issue concerning restitution. As a part of this argument it is clear that appellant actually seeks to withdraw from the plea agreement. Therefore, we consider the validity of the plea agreement itself.

In *State v. Norris*, 113 Ariz. 558, 559, 558 P.2d 903, 904 (1976), the court attempted to harmonize conflicting decisions of the court with respect to the test to be utilized in determining whether there is a factual basis for a guilty plea or a no-contest plea when the original charge has been amended or reduced. *Id.* In *State v. McGhee*, 27 Ariz.App. 119, 551 P.2d 568 (1976), one of the cases harmonized in *Norris*, the court found there was an insufficient factual basis for an amended plea. The court noted that it was:

distasteful to relieve appellant of the consequences of an agreement which he knowingly made. But we find the alternative, which would necessitate our approval of a misrepresentation approaching a fraud on the courts, to be more distasteful. Setting aside the conviction and reinstituting the original charge in a case such as this is not too great a price to pay for upholding the integrity of the judicial process.

27 Ariz.App. at 122, 551 P.2d at 571.

In *Norris*, the court found *State v. Carr*, 112 Ariz. 453, 455, 543 P.2d 441, 443 (1975), dispositive of the issue of how to determine the existence of a factual basis, whether the defendant pled to the original charge or to an amended or lesser charge. The court held that, in either case, the trial court must be satisfied that there is a factual basis to support all the essential elements

of whatever charge the defendant pleads to. *State v. Norris*, 113 Ariz. at 559, 558 P.2d at 904. This is an important consideration *sub judice* because appellant, originally charged with forgery, pled to an amended charge of criminal simulation.

In *State v. Rea*, 145 Ariz. 298, 300, 701 P.2d 6, 8 (App.1985), the court, in deciding the issue of whether criminal simulation was a lesser-included offense of forgery, compared the essential elements of forgery and criminal simulation. It concluded that criminal simulation, given its history and the Report of the Arizona Criminal Code Commission 196 (1975), did not include the simulation of a "written instrument" as defined in A.R.S. § 13–2001[1]. *Id.* Therefore, the court concluded, criminal simulation defines an offense different from forgery and could not be considered a lesser-included offense. In reviewing the factual basis for the plea in this case, it is clear that there was no factual basis for the plea to criminal simulation because appellant had forged a written instrument.

Furthermore, the court and counsel allowed appellant to enter into this plea agreement on the basis that the charge of criminal simulation would be an "open-ended" offense and it was, in fact, left undesignated at the time of sentencing. The offense in this case occurred in February 1984. In *State v. Sweet*, 143 Ariz. 266, 271–72, 693 P.2d 921, 926–27 (1985), the court noted that the new criminal code made significant changes in the criminal statutes including the classification of felonies and misdemeanors for sentencing purposes. *Id.* The code provided the method of designating "open-ended" offenses and, under the new code, the trial court could no longer delay the designation of the offense,

as it had been able to do under *State v. Risher*, 117 Ariz. 587, 574 P.2d 453 (1978). Under the statute in effect at the time of the commission of this offense, the court was required to designate the offense as a felony or misdemeanor at the time it entered the judgment of conviction. The statutory language in A.R.S. § 13–702(G) (now § 13–702(H)), clearly prohibited the trial court from delaying the designation of the offense as it did here. It was, as noted in *Sweet* and in *State v. Wright*, 131 Ariz. 578, 581, 643 P.2d 23, 26 (App.1982), contrary to law for the trial court to withhold designating the appellant's offense as either a felony or a misdemeanor pending the outcome of the probationary period. *State v. Sweet, id.* (Subsequently, the legislature again amended A.R.S. § 13–702(H) to permit the judge to defer designation of the offense, but the amendment does not affect our determination. Ch. 16, § 1, Laws 1984).

Because there was no factual basis for the plea to criminal simulation and the plea agreement, as well as the trial court, improperly left the offense undesignated, it is not necessary to discuss the remainder of the restitution issue.

This matter is reversed and remanded with directions to the trial court to set aside the plea agreement, to reinstate the original charges against appellant and to commence further proceedings against appellant consistent with this opinion.

HAIRE, V.C.J., and SHELLEY, J., concur.

---

1. The court held that "object" as used in A.R.S. § 13–2004 does not include a written instrument:

A.R.S. § 13–2004:

Criminal simulation; classification

A. A person commits criminal simulation if, with intent to defraud, such person makes, alters, or presents or offers, whether accepted or not, any object so that it appears to have an antiquity, rarity, source, authorship or value that it does not in fact possess.

B. Criminal simulation is a class 6 felony. A.R.S. § 13–2001(9):

"Written instrument" means:

(a) Any paper, document or other instrument containing written or printed matter or its equivalent; or

(b) Any token, stamp, seal, badge, trademark or other evidence or symbol of value, right, privilege or identification.