693 P.2d 944

**The STATE of Arizona, Appellee,**

v.

**Donald Michael SWEET, Appellant.**

**2 CA–CR 3243.**

Court of Appeals of Arizona,
Division 2.

May 30, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Clinton L. Liechty, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was convicted by a jury of one count of unlawful possession of marijuana for sale and one count of unlawful possession of a narcotic drug (cocaine) for sale of a value of more than $250. The trial court also found the allegations of a prior conviction of attempted burglary and that the defendant committed the offense while out on probation were true.

Appellant was sentenced to imprisonment for 2.25 years on the marijuana count and 10.5 years on the cocaine count, the sentences to run concurrently with each other but consecutive to his sentence on the attempted burglary charge.

He contends that the trial court erred in 1) denying his motion to suppress the evidence, 2) admitting a memo paid into evidence, 3) admitting into evidence certain of his statements made to the police, and 4)

sentencing him pursuant to A.R.S. § 13–604.01. We affirm.

On June 18, 1983, the police received a telephone call on its 88–CRIME line from a concerned citizen who stated that on January 18, 1983, at 11:30 a.m., he had observed a white male carry a large garbage bag of marijuana into appellant's house. The citizen stated he knew it was marijuana because all his friends use marijuana and he had seen it on numerous occasions. The citizen also stated that the marijuana stems were sticking out of holes in the bag. He observed the man who had been carrying the bag leave the house and the marijuana had been left in the house.

On the basis of this call, Officer Novak, of the Tucson Police Department obtained a search warrant at about 7 p.m. Because the house was located outside the city limits, Novak called for assistance from sheriff's deputies. The deputies met him near the house and they prepared to serve the warrant. It was decided, however, that the probable cause basis for the warrant was marginal so Novak decided to wait and watch the house for a while. He returned to the police station to organize a surveillance team. Once he arrived at the station, Novak discovered that the address given by the anonymous caller that morning might be the same one where an undercover agent had purchased cocaine. The undercover agent had accompanied a confidential informant to the address, where the informant purchased a small quantity of cocaine. The undercover agent was in the house when the sale took place but did not witness the sale which took place in another room.

Novak presented an oral affidavit to the justice of the peace, by telephone, as follows:

"On today's date at approximately 12:00 I received a call from a concerned citizen through the 88–CRIME program. The citizen stated that at approximately 11:30 he saw a white male carrying a large garbage bag of marijuana into the residence at 9684 East Burnett. The concerned citizen states that he is sure that it was marijuana because all of his friends use marijuana and he has seen it on numerous occasions. He stated that marijuana stems were sticking out through numerous holes in the bag. The white male that took the marijuana into the residence then left, leaving the bag of marijuana at the house. I have further learned that within the past week one of the Tucson Police Department undercover officers went to the residence at 9684 East Burnett and purchased drugs from the resident there, a subject by the name of Donald M. Sweet. While in the residence the officer noticed marijuana, cocaine and associated paraphernalia with both using and selling narcotic drugs. I believe the informant's information is reliable because he would receive no reward from the 88–CRIME program for any false or erroneous information. I believe that the property I described earlier in this affidavit is evidence of Possession of Marijuana and Possession of Marijuana For Sale for the following reasons.

The citizen has seen marijuana in the past and stated it was marijuana, he also stated that there has been large amounts of trafficking in and out of the residence in the past and my experience as a Narcotics Officer, this is a normal pattern of drug trafficking, also the fact that within the last week one of our undercover agents actually has purchased drugs out of the residence from the owner of the residence. I believe that the property previously described in this affidavit is presently on the premises located at 9684 East Burnett. My belief that the property is presently at this location is based upon the following reasons.

I have received no further calls from the citizen stating that the marijuana was taken out of the residence and it is normal practice for large amounts of marijuana to be manicured and packaged for sale and the suspects would not have had time to do this yet. . . ."

At approximately 8 p.m. on the evening of January 18, 1983, Officers Novak and

Hendricks, along with other officers, arrived at appellant's southeast Tucson home to serve the search warrant they had obtained based on the above information. The officers knocked on the door and announced their presence. They waited a short time, knocked again and waited another short period. The officers heard people moving away from the door and at this point the officers kicked in the door. After Hendricks entered the house, he saw the appellant coming out of the southeast bedroom going down the hall. Novak placed appellant under arrest.

Hendricks went into the southeast bedroom where he saw several plastic bags of marijuana. Hendricks called Novak into the bedroom to show him the marijuana and Novak was designated as the "evidence finder".

In addition to the marijuana, Novak also found in the southeast bedroom, in plain view, several "papers" containing cocaine. The cocaine was packaged in folded White Lady papers. White Lady paper is used to package cocaine. These papers were lying in an open steamer trunk and had different weight markings written on the outside of them.

The total weight of the cocaine was 3.2 grams, the street value of cocaine at the time being between $120 and $150 per gram. A set of scales was also found on top of the desk in the southeast bedroom. These scales were encrusted with white powder and marijuana residue. In the same room, the officers found a razor blade and a large mirror with white powder and marijuana residue. A mirror and razor blade are commonly used to cut cocaine.

There was a bathroom off the above described southeast bedroom. In this bathroom officers found a box with 600 unused White Lady wrapping papers in a box which originally contained 900 papers. In addition to the White Lady papers, the officers also found in the bathroom two containers of cutting agents for cocaine, glass vials that are used to store cocaine, a scale weight and spoons. The officers also found a memo pad lying open in the bathroom. Figures in the memo pad corresponded to percentage cost of cocaine.

Other drug paraphernalia was found in appellant's house, including a long pipe for smoking marijuana, a tube for inhaling cocaine with a white powdery residue in it, and a strainer to break up the cocaine. The officers also found $800 in cash on appellant.

As the officers were getting ready to leave the residence, appellant asked the officers who was going to be arrested and what charges were going to be filed against him. Novak told the appellant he was going to be charged with possessing narcotics and marijuana for sale. Appellant then asked the officer if the officers had caught him through the 88–CRIME program or did they have any "buys" on him. While the appellant and officers were still at the house and before they went to the police station, the appellant asked Novak, "What am I going to have to do to get out of this?" Before leaving the house appellant told the officers he had been "ripped off" last Sunday night. The robber had fired a shot through the bedroom door and damaged the front door. The robber stole $3,000 from the appellant and a little "toot" ("toot" is a slang expression for cocaine).

On the way to the police station, the appellant asked another officer, Grimshaw, what he would have to do to get out of the charge. When they got to the police station, the officers informed appellant that any information he had or any act he claimed he could perform would have to be conveyed to the county attorney. Appellant was also advised that anything he said would be used against him. After being given his *Miranda* rights and advised of the fact that the police could not make any deals, appellant again asked what he could do to get out of the charges. Appellant said that the "stuff was his" and not his girlfriend's, who was arrested with him. He was told that the police would have to know what he could do before they would even go to the county attorney. He told the officers about the person who robbed

him on Sunday and claimed to be able to purchase a large amount of cocaine from a supplier. He told the officers he was coming to his house after he had been robbed to sell him cocaine but he could not buy any cocaine because the robber had taken all of his money.

## SUPPRESSION OF THE EVIDENCE

■ Appellant contends that under the test enunciated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the justice of the peace was not provided with sufficient information to establish probable cause for the issuance of a search warrant. We do not agree.

In *Illinois v. Gates*, supra, the Illinois Supreme Court, applying the so-called "two-pronged test" in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), held that an anonymous letter sent to the Bloomingdale Police Department did not furnish probable cause for the issuance of a search warrant by a magistrate. The United States Supreme Court, while it agreed with the Illinois Supreme Court that an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report, did not agree that these elements should be entirely separate and independent requirements to be rigidly exacted in every case. Instead the court stated that they "... should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." 103 S.Ct. at 2320.

The court stated that referring to the totality of the circumstances is far more consistent with its prior treatment of probable cause than any rigid demand that a specific test be satisfied by an informant's tip. It further noted that the Illinois Supreme Court and other courts, including the Maryland court in *Stanley v. State*, 19 Md.App. 507, 508, 313 A.2d 847 (1974), had apparently taken the language in its case

of *Aguilar v. Texas*, supra, and changed the fluid concept of probable cause into a "neat set of legal rules." In order to put the nation's search and seizure ship back on the right course, the supreme court held:

"... We conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. [Citations omitted] The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. [citation omitted] We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*." 103 S.Ct. at 2332.

Under the "totality of circumstances test" the affidavit in question demonstrates that there was a substantial basis for the magistrate to conclude that the officer would probably find marijuana at appellant's residence. A concerned citizen had stated that at 11:30 a.m. on the day the warrant was issued and served, he saw a white male carry a large garbage bag of marijuana into appellant's residence. He could observe through the holes in the bag that marijuana stems were sticking out. The citizen knew that the bag contained marijuana because all of his friends used marijuana and he had seen marijuana numerous times. The same male who carried the bag into the appellant's residence left without the bag from which it could be

inferred that the marijuana was left inside the home. Within the past week a sale of cocaine had taken place inside the residence. The officer who participated in the sale noticed marijuana, cocaine and associated paraphernalia inside the home. Probable cause does not demand the certainty we associate with formal trials. It is enough if there were a fair probability that the anonymous telephone caller saw marijuana being taken into the home and that it was still there. The previous sale at the residence and the observation by the officer at the time corroborate the information given by the anonymous phone caller and provide just this probability. It is apparent that the justice of the peace issuing the warrant had a substantial basis for concluding that there was probable cause to search the residence.

### ADMISSION OF THE MEMO PAD

■ Appellant contends that the trial court erred in admitting Exhibit #28, a memo pad, into evidence. This pad contains various numbers which seemingly indicate that the marijuana and cocaine inside the residence was being possessed for sale. He contends, for the first time, that this evidence should have been excluded under Rules 401, 402 and 403 of the Rules of Evidence. Rule 401 defines relevant evidence. Rule 402 states that irrelevant evidence is admissible and Rule 403 allows the trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. However, since appellant did not raise these objections below, he cannot do so on appeal for the first time.

■ He did object below on the ground there was no foundation as to who owned the memo pad. The memo pad was found in appellant's house in which he was living with his girlfriend. The house was filled with narcotics paraphernalia, narcotics and a number of objects which demonstrated that the people who occupied the house were selling narcotics. Appellant has offered us no authority for his proposition that the memo was admitted without any

foundation. His contention is totally devoid of merit and the trial court did not err in admitting the memo.

### APPELLANT'S STATEMENTS

■ On the evening of his arrest, the appellant made several statements to the police at his residence, and at the police station. The statements concerned a robbery that occurred at his house, ownership of the seized contraband, and the possibility of making a deal with the authorities whereby he could work off his charge by helping the police make a drug buy. These statements were admitted into evidence at the trial. He contends that the trial court erred in admitting these statements since they were made in connection with a plea negotiation. We do not agree. Rule 410 of the Arizona Rules of Evidence, 17A A.R.S., states:

"Except as otherwise provided by applicable Act of Congress, Arizona Statute, or the Arizona Rules of Criminal Procedure, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere or no contest, or an offer to plead guilty, nolo contendere or no contest to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers is not admissible against the person who made the plea or offer in any civil or criminal action or administrative proceeding."

Appellant does not contend that his statements were made in violation of *Miranda* or were otherwise involuntary. He simply contends that the foregoing Rule 410 prohibits their admission into evidence. We do not agree. There was no evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere or no contest or an offer to plead guilty, nolo contendere or no contest to the crime charged or any other crimes. His statements were not made in connection with any plea agreements and they did not fall under Rule 410. The trial court did not err in admitting both statements into evidence.

### THE APPLICABILITY OF A.R.S. § 13–604.01

 On June 26, 1981, the appellant was sentenced to three years' probation after pleading to attempted third degree burglary. The trial court left it as an open ended offense. It was this open ended offense that the state alleged in proof that he was on probation for when the instant offenses were committed.

At the time appellant committed the instant offenses, A.R.S. § 13–604.01(B) provided:

"Notwithstanding any provision of law to the contrary, a person convicted of any felony offense not included in subsection (A) of this section if committed while the person is on probation ... shall be sentenced to a term of not less than the presumptive sentence authorized for the offense, and the person is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement or on any other basis except as specifically authorized by § 31–233(a) or (b) until a sentence imposed by the court has been served. A sentence imposed pursuant to this subsection will be consecutive to any other sentence from which the convicted person had been temporarily released." (Added By-Laws 1982, Chap. 322, Sec. 2.)

In *State v. Wright*, 131 Ariz. 578, 643 P.2d 23 (1982) we held that A.R.S. § 13–702(G) prohibited the trial judge from delaying the designation of the offense as a felony or misdemeanor as had been previously done under prior law. See, for example, *State v. Risher*, 117 Ariz. 587, 574 P.2d 453 (1978). Relying on *State v. Wright*, supra, the appellant contends that since the trial court did not properly exercise its discretion by designating the offense as a felony when it put the appellant on probation, that he was not on probation for a felony and therefore Rule 13–604.01(B) did not apply.

We note that the statute did not require that the person be on probation for a felony offense in order for it to be applicable. However, appellant points out that the statute was subsequently amended in 1983 and that it now requires that the person be on probation for a conviction of a felony offense before it is applicable. Assuming, arguendo, that under the old statute he had to be on probation for a conviction of a felony, the trial court still did not err in applying the statute. He was on probation for some criminal offense. Having failed to designate the offense as required by *State v. Wright*, supra, we do not believe that he was in some sort of limbo having, for the purposes of A.R.S. § 13–604.01(B), neither committed a felony nor a misdemeanor. Until the court declares it to be a misdemeanor, it is a felony conviction. See *State v. Risher*, supra.

Affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.