927 P.2d 1303

**STATE of Arizona, Appellee–Respondent,**

v.

**Steve Richard FILLMORE, Appellant–Petitioner.**

Nos. 1 CA–CR 90–1147, 1 CA–CR 95–0380–PR.

Court of Appeals of Arizona, Division 1, Department E.

May 28, 1996.

Review Dismissed Dec. 17, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Colleen L. French, Assistant Attorney General, Phoenix, for Appellee.

John R. Gustafson, Chandler, Martin, Hart & Fullerton by James R. Hart, II, Mesa, for Appellant.

## OPINION

FIDEL, Judge.

Steve Richard Fillmore ("Defendant") appeals from his convictions on thirty-nine counts of theft, trafficking in stolen property, burglary, and illegal control of an enterprise, and from the sentence that the trial court imposed. We have consolidated his appeal with his petition for review from the trial

court's partial denial of his petition for post-conviction relief. We find that it was error to charge the theft of a vehicle and its contents as two separate offenses. We also find that it was an abuse of discretion for the trial court to dismiss without a hearing Defendant's claim that he received ineffective assistance of trial counsel. Finally, we find that the trial court abused its discretion when it imposed consecutive sentences that, as modified in post-conviction relief proceedings, still total 289.75 years.

# I. BACKGROUND

Defendant operated a criminal "chop-shop" enterprise that stole, dismantled, and reassembled vehicles and sold or converted the contents. A tip from the silent witness program led police to Defendant's residence, where they established surveillance and later executed search warrants and seized evidence of theft.

A grand jury indicted Defendant on forty-five felony counts. Defendant was tried before a jury. Four co-defendants who had entered plea agreements testified for the State. The State also called twenty-five victims, who testified that their property or their employers' property was stolen. The jury found Defendant guilty of one count of illegally conducting an enterprise, a class 3 felony; twenty-seven counts of theft, class 3 felonies; six counts of trafficking in stolen property, class 2 and 3 felonies; four counts of third degree burglary, class 4 felonies; and one count of theft, a class 5 felony. He was acquitted on six counts.

Pursuant to the State's allegation of a prior felony conviction, Defendant was sentenced as a repetitive offender for each of his thirty-nine counts. The court also imposed enhanced sentences under Arizona Revised Statutes Annotated ("A.R.S.") § 13–604.02(B)

for thirty-two offenses committed while Defendant was on felony probation. The longest sentence was 15.75 years; the shortest was five years. The court ordered concurrent sentences for counts involving the same victim, but otherwise imposed consecutive terms. The court also ordered that these terms be consecutive to the sentence imposed in CR 88–10200, for which Defendant was on probation at the time of his arrest. Defendant's sentences totalled 298.25 years of imprisonment.

We suspended disposition of Defendant's appeal to permit processing of his petition for post-conviction relief ("PCR"), during which the State conceded several sentencing errors that Defendant had raised on appeal.[1] The trial court resentenced Defendant to remedy sentencing errors, but rejected arguments by both Defendant and the State that the cumulative, corrected sentence of 289.75 years was excessive for Defendant's crime. We have consolidated Defendant's appeal with his petition for review of the trial court's partial denial of the PCR.

# II. PLEA NEGOTIATIONS

We first consider Defendant's claim on appeal that the trial court erred in admitting into evidence comments that he made while attempting to open plea-bargain discussions with the police.

Several weeks after police officers searched his property and seized evidence, Defendant approached auto theft detectives Harry Rotsteen and Swain Granieri to request a meeting. Detective Rotsteen and Defendant met at a Phoenix supermarket on June 5, 1989. Detective Rotsteen testified:

> During the same conversation he also indicated that he wanted to furnish information on the other individuals we were investigating and did not want to go to jail.

---

1. The State conceded that count 1 was not alleged as a prior conviction under A.R.S. § 13–604(H) and that it was therefore error for the trial court to enhance Defendant's sentence on count 5. The trial court reduced the sentence for count 5 from the presumptive 11.5 years for a repetitive class 3 felony to the presumptive 7.5 years for a non-repetitive class 3 felony. The State also conceded that its allegation that Defendant was on probation pursuant to A.R.S.

§ 13–604.02 was inadequate. The trial court therefore removed all references to A.R.S. § 13–604.02 from all sentences. Finally, the State conceded that sentences for all counts should have been concurrent with count 1 because the acts that comprised the other counts were the same acts that comprised count 1. The trial court ordered that the other sentences be served concurrently with count 1.

He further indicated he would be able to turn information on individuals other than people we were presently investigating.... However, he stated he couldn't testify and his name couldn't be used. All the information would have to remain anonymous.

I advised him at that time the County Attorney—I knew right up front the County Attorney wouldn't agree to that kind of situation. He asked me—to put it in words of simple, exact words, "you guys have some kind of pull talking to the County Attorneys." I left with that, took his information and presented it to the County Attorney. I again reminded him I knew it wasn't going any place.

Detective Rotsteen informed Defendant the following week that the County Attorney had rejected his offer.

Defendant moved to preclude introduction of the discussion with Rotsteen because, he argued, it was a preliminary attempt at plea negotiations. The court denied the motion. Defendant argues that the trial court erred when it allowed Detective Rotsteen to testify about the substance of their conversation.

### A. Offer to Plead Guilty

Admission of offers to plead guilty is governed by Rule 410, Arizona Rules of Evidence, 17A A.R.S.[2]:

RULE 410. OFFER TO PLEAD GUILTY; NOLO CONTENDERE; WITHDRAWN PLEA OF GUILTY

Except as otherwise provided by applicable Act of Congress, Arizona statute, or the Arizona Rules of Criminal Procedure, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere or no contest, or an offer to plead guilty, nolo contendere or no contest to the crime charged or to any other

crime, or of statements made in connection with any of the foregoing pleas or offers is not admissible against the person who made the plea or offer in any civil or criminal action or administrative proceeding.[3]

The State argues that Rule 410 does not apply to offers to plead guilty that are made before the Defendant has been formally charged with a crime. We need not decide this question because we find that Defendant's conversation with the police did not constitute a plea offer within the contemplation of the rule.

■ Rule 410 does not protect statements that a suspect makes in an unsolicited offer to assist authorities in order to avoid prosecution or imprisonment. In *State v. Sweet*, 143 Ariz. 289, 693 P.2d 944 (App.1984), the defendant asked police, "What am I going to have to do to get out of this?" *Id.* at 292, 693 P.2d at 947. The police later advised him that they could not make deals and that "the police would have to know what he could do before they would even go to the county attorney." *Id.* The defendant then made incriminating admissions while offering to help the officers purchase cocaine from a supplier. *Id.* at 292–93, 693 P.2d at 947–48. Because "[t]here was no evidence of a plea of guilty, ... or an offer to plead guilty," this court held that "[defendant's] statements were not made in connection with any plea agreements and they did not fall under Rule 410." *Id.* at 294, 693 P.2d at 949.

■ As in *Sweet*, Defendant made no clear admission of guilt or offer to plead guilty. Instead, to avoid going to jail, Defendant offered to assist the authorities by providing information that would help them to identify other criminals. *See id.* Detective Rotsteen testified that Defendant "didn't say he would admit. He just was saying he'd arrange to

---

**2.** The trial court, after hearing the arguments of counsel, mistakenly referred, when explaining its ruling, to Rule 408, which governs "Compromises and Offers to Compromise," instead of to Rule 410. Neither counsel interjected to correct the court. The mistake was inconsequential, however, as the trial court's ruling is supported by Rule 410.

**3.** On appeal, Defendant argues that Rule 17.4(f), Ariz. R.Crim. P., 17 A.R.S., also protected his offer. Rule 17.4 states in pertinent part that "if no [plea] agreement is reached, ... the plea discussion ... shall [not] be admissible against the defendant in any criminal or civil action or administrative proceeding." Because Rule 410 protects any plea offers that would also be protected by Rule 17.4(f), we confine our discussion to Rule 410.

recover lots of property for us and give us some good information involving big time thefts in Phoenix." Because Defendant made no plea offer, the court did not err by refusing to exclude his statements.

### B. Relevancy

Trial counsel also objected to admission of Defendant's statements to Detective Rotsteen on the grounds that they were irrelevant and highly prejudicial. The trial court admitted the statements as an admission of a party opponent. *See* Ariz. R. Evid. 801(d)(2), 17A A.R.S. The trial court did not explicitly address the relevancy or prejudice objections, both of which Defendant renews upon appeal.

■ We review admissibility of evidence for abuse of discretion. *State v. Hensley*, 142 Ariz. 598, 602, 691 P.2d 689, 693 (1984). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401, 17A A.R.S.

■ By finding Defendant's statement to be an admission against interest, the trial court implicitly found it probative of a fact at issue—Defendant's guilt. This implicit finding was correct. Defendant testified that he was not a part of the chop-shop enterprise and that any role he played was unwitting. His statements to Detective Rotsteen, however, tended to prove familiarity with the enterprise and consciousness of guilt. Evidence is relevant that tends to show a defendant's consciousness of guilt. *State v. Ferguson*, 149 Ariz. 200, 210, 717 P.2d 879, 889 (1986). Defendant's relevance objection was appropriately overruled.

The next question is whether the probative value of the evidence was exceeded by its potential for unfair prejudice. Ariz. R. Evid. 403, 17A A.R.S. Defendant did not argue to the trial court that the challenged evidence was *unfairly* prejudicial; he merely argued that it was highly prejudicial and of questionable relevance. Any evidence that is probative of guilt is thereby prejudicial to a defendant. Unfair prejudice is something

different, and Defendant made no effort to show it here.

For the foregoing reasons, we conclude that the trial court properly admitted Defendant's statements to Detective Rotsteen into evidence.

### III.   SEPARATE CHARGES FOR SINGLE ACT OF THEFT

Defendant argues that he was improperly charged and sentenced for theft under counts 11 and 12 of the indictment. Count 11 accused Defendant of theft by knowingly controlling a tractor and trailer belonging to Continental Transportation. Count 12 accused Defendant of theft of the trailer's contents—women's clothing owned by Montgomery Ward. Trial testimony established that Defendant supervised the burglary of Continental Transportation's storage yard and the theft of the tractor and trailer, that Defendant sold the trailer's contents, that the tractor was abandoned, and that an accomplice converted the trailer into a storage shed.

Defendant contends that these acts support one count of theft, not two, because "[t]heft of a container includes theft of its contents." We agree. Although Defendant does not use the term, his argument implicates the "single larceny doctrine," under which "the stealing of property from different owners at the same time and the same place constitutes only one larceny." *State v. Brown*, 113 N.M. 631, 830 P.2d 183, 184 (Ct.App.1992); *accord Martin v. State*, 797 P.2d 1209, 1218 (Alaska.Ct.App.1990). *See generally* Daniel H. White, Annotation, *Single or Separate Larceny Predicated upon Stealing Property from Different Owners at the Same Time*, 37 A.L.R.3d 1407 (1971 & Supp.). The doctrine rests on the rationale that theft "is one offense because the act of taking is one continuous act or transaction, and since the gist of the offense is the felonious taking of property, the legal quality of the act is not affected by the fact that the property stolen belonged to different persons." *Id.* at 1409–10. In a substantial majority of jurisdictions that have addressed the issue, the single larceny doctrine has been applied. *Id.* at 1409.

180

Although no Arizona case has explicitly adopted the single larceny doctrine, two cases demonstrate its compatibility with Arizona law. In *State v. Hoffman*, 78 Ariz. 319, 279 P.2d 898 (1955), a defendant was improperly convicted of two counts of sale of assets with the intent to defraud creditors. One count concerned the sale of fifty cases of pink salmon; the other concerned the sale, at the same time and place, of twenty-four cases of red salmon. *Id.* at 328, 279 P.2d at 904. Determining that the crime was premised on the sale of assets, not the number of objects sold, the supreme court vacated one of the two convictions. *Id.* Although the *Hoffman* court did not refer or analogize to the single larceny theory, its rationale was essentially the same. Some support for the single larceny doctrine is also provided in *State v. Reisig*, 128 Ariz. 60, 62, 623 P.2d 849, 851 (App. 1980). In *Reisig*, the defendant was charged with nine counts of possession of altered property. Relying on the single larceny doctrine for analogous support, the court concluded that simultaneous possession of nine articles of property without serial numbers in violation of a single statute constituted a single offense. Our theft statute should be similarly construed.

We hold that the rationale of the single larceny doctrine is applicable to the crime of theft in Arizona and that, accordingly, the theft of the trailer and its contents should have been charged in a single count. We therefore vacate the conviction for count 12.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Defendant claims in his PCR that he received ineffective assistance of counsel during trial and at sentencing. We will discuss all sentencing issues, including ineffective assistance, in the next section of this opinion. We confine our present discussion to the question whether the trial court erred in summarily dismissing the claim that Defendant received ineffective assistance at trial.

To avoid summary dismissal and achieve an evidentiary hearing on a post-conviction claim of ineffective assistance of counsel, Defendant must present a colorable claim (1) that counsel's representation was unreasonable or deficient under the circumstances and (2) that he was prejudiced by counsel's deficient performance. *See* Ariz. R.Crim. P. 32.6, 32.8, 17 A.R.S.; *State v. Rossi*, 146 Ariz. 359, 364, 706 P.2d 371, 376 (1985) (two elements of ineffective assistance); *State v. Rosas*, 183 Ariz. 421, 422, 904 P.2d 1245, 1246 (App.1995) (need to present colorable claim).

The present claim concerns the failure of trial counsel to move to suppress the evidentiary fruits of a warrantless search. The claim centers on the trial testimony of Officer Finlayson of the Phoenix Police Department. Officer Finlayson testified that he received a call from a silent witness who reported that "a person living in a travel trailer ... was involved in stolen trucks and was living in a stolen trailer." The witness named a street and approximate location where the trailer could be found. The officer searched and did not find it. The witness called again and named a different street. The trailer was not there. While searching, however, the officer recalled a Vineyard Street property, two blocks away, that matched the witness's description. Approaching that property, he found that, from the street, a trailer top was visible above the wall. Though the officer had no warrant, he entered the property to determine whether the trailer matched the witness's report. The officer stated:

I could see that there was a travel trailer, the top of it, sticking up over the wall, and wanted to determine if this could possibly be the trailer that the caller talked about. But unable to see that from the street, I walked through a big open gate into what looked like a commercial yard—there were trucks, a flatbed semi-trailer and I think maybe an old tractor sitting around—to where I could see this trailer to see if it fit the description of the caller.

Officer Finlayson testified that he observed the name "Scamper" on the back of the travel trailer. He later checked a printout of vehicles stolen in Arizona, found two or three Scamper trailers listed, and concluded that one of the listed Scampers was the trailer reported by the silent witness and located in the Vineyard Street yard.

Officer Finlayson's observations led the Phoenix Police Department to establish surveillance "to get further information from the trailer." The surveillance in turn generated evidence to support search warrants. Officer Finlayson testified:

Q. As a result of [the information obtained in the initial search], did you set up a surveillance in that area?

A. Yes we did; not specific for a period of time, but surveilling the area from some distance away to get further information from the trailer.

. . . .

Q. Okay. And you ultimately determined that it was, in fact, probably the one you were looking for and you went in with a search warrant; is that correct?

A. We determined enough probable cause to go to a judge and get a search warrant to go and search for the trailer to see if that, in fact, was the trailer, yes.

Evidence seized during execution of search warrants and used against Defendant at trial included four vehicles with altered or missing identification numbers, each incorporating parts traced to stolen vehicles; other stolen parts not yet incorporated into vehicles; an engine traced to a stolen speedboat; the license plate from a stolen vehicle; a drill press, pallet jack, and other tools traced to stolen vehicles; and a "slide hammer" useful as an ignition-removal tool. Because defense counsel never moved to suppress this evidence, the trial court never held a suppression hearing to determine whether the initial search of the property was illegal and, if so, whether the seized evidence was inadmissible "fruit of the poisonous tree."

■ We are satisfied that Defendant presented a colorable claim of unreasonable performance, the first element of an ineffective assistance claim. Absent some compelling tactical reason, a lawyer "falls below the minimum standards of professional competence" who neglects to move to suppress evidence obtained through a questionably legal search. *See State v. Watson,* 134 Ariz. 1, 4–5, 653 P.2d 351, 354–55 (1982). The initial search—a warrantless entry onto private property without consent or exigent circum-

stances—was clearly of questionable validity. Under the Fourth Amendment of the United States Constitution, "[w]arrantless searches are *per se* unreasonable." *State v. Fisher,* 141 Ariz. 227, 237, 686 P.2d 750, 760 (1984).

The trial court summarily concluded that any taint from the initial search did not extend to the evidence seized pursuant to a later warrant. The court explained:

[T]he officer's approach on open property to look at a trailer matching the description of one an informer had told him was elsewhere did not "poison the fruits" of the later search based upon a warrant whose issuance in turn was based upon extensive, proper surveillance by police.

The trial court assumed in giving this explanation that the surveillance was separate and distinct from the initial search. To put it another way, the trial court treated the surveillance not as a "branch" of the initial search, but as a free-standing tree. This assumption ran contrary, however, to the testimony of Officer Finlayson, who stated the surveillance was initiated upon the basis of the information that he obtained in his initial, warrantless, search. Because Officer Finlayson's testimony directly linked the later evidence to the initial search, Defendant presented a colorable claim that the evidence in question was excludable fruit of the initial search.

■ By finding a colorable claim, we do not suggest that, had trial counsel moved to suppress the evidence in question, the motion should necessarily have been granted. Had trial counsel filed such a motion, the State would have faced the burden in a suppression hearing of proving the admissibility of the evidence. *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975); *see also United States v. Johns,* 891 F.2d 243, 245 (9th Cir.1989). The State might conceivably have secured admission by demonstrating that the leads the police obtained in the initial, unwarranted, search "were so insubstantial that their role in the discovery of the evidence sought to be suppressed must be considered de minimus." *Johns,* 891 F.2d at 245 (applying the independent source doctrine). Similarly, the State might conceivably have established that, even

if Officer Finlayson had not walked onto the property, his observations from the street and through the open gate would have led him to initiate surveillance.[4] There is no evidence in the present record, however, that would permit the trial court to assume that the State could have sustained such a burden at a suppression hearing before trial. Indeed, the pertinent evidence in the record—Officer Finlayson's trial testimony that he walked onto the property because he was "unable to see ... from the street" whether the trailer fit the caller's description—supports Defendant's colorable contrary claim. It was therefore inappropriate at the PCR stage for the trial court to summarily resolve the issue of suppressibility without a hearing.

The trial court might nonetheless have denied a hearing and summarily resolved the claim if it had concluded that Defendant could not show by "a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). The trial court drew no such conclusion, however. Nor can we summarily resolve this issue from the record before us. The evidence seized at Defendant's property—stolen vehicles, reassembled parts of stolen vehicles, auto theft tools, etc.—was highly inculpatory on many counts. We conclude that Defendant presented a colorable claim of prejudice.

We reiterate that we do not find ineffective assistance of trial counsel at this stage. We find, rather, that Defendant has submitted a colorable claim that warrants an evidentiary hearing on that issue, and we remand for such a hearing to be held.

4. "As a general proposition, the police may see what may be seen from a public vantage point where they have a right to be." *Florida v. Riley*, 488 U.S. 445, 449–50, 109 S.Ct. 693, 696, 102 L.Ed.2d 835 (1989) (internal quotation marks omitted). Therefore, if the State could show that the inculpatory information that led to initiation of surveillance would have been obtained by observation through the open gate, the evidence may have been admissible under the inevitable discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377 (1984) ("when, as here, the evidence in question would inevitably have been discovered with-

## V. SENTENCING

Defendant argues that the court's sentencing procedure was arbitrary and capricious and that the sentence of 297.5 years, reduced on PCR to 289.75 years, is cruel and unusual punishment that violates the Eighth Amendment. Because we find abuse of discretion, we do not reach Defendant's Eighth Amendment claim.

Before trial the court asked the prosecutor "to cut [the number of counts] down to something in line with what he actually wanted." Instead, the prosecutor proceeded on forty-five counts and called twenty-five alleged victims as witnesses. After Defendant was convicted, the State observed that Defendant could be sentenced to nearly 400 years but recommended instead a flat-time sentence of 15.75 years.[5]

The court rejected the State's recommendation and imposed a sentence totalling 297.25 years. At sentencing, the court characterized the State's position as "well, let's only pretend that he was guilty of one and throw the rest away." The trial court acknowledged that imposing consecutive sentences:

> results in a very extravagant number of years by application of the criminal code, but that is a decision which was preliminarily made by the legislature and secondarily by the prosecution to bring 45 counts. The case could have been tried with three counts, I think, but it wasn't. The jury worked on all 45; found guilty of 39. The victims testified and they have been damaged, and I think each one is entitled to separate treatment.

When the trial court asked defense counsel if he wished to comment, counsel declined to

out reference to the police error or misconduct, there is no nexus to provide a taint and the evidence is admissible").

5. An aggravated sentence to count 1, a class 3 felony with one prior felony conviction, is fifteen years. A.R.S. §§ 13–604, 13–701. The longest presumptive term among the remaining counts is 15.75 years for counts 20, 25, and 42, class 2 felonies with two prior felony convictions. *Id.* If the sentences imposed are served concurrently, Defendant must serve 15.75 years.

argue for his client, responding only, "the bottom line appears to be you're going to do what you want anyway."

At the PCR hearing, the State joined Defendant in appealing for concurrent sentences. The State admitted that the prosecution was greedy and overzealous, stipulated that defense counsel was ineffective at sentencing, and reiterated that it thought concurrent terms appropriate. The State described "the overall picture" as "out of focus with the number of years that have been imposed."[6]

The court concluded that defense counsel was not ineffective at sentencing "under the circumstances with which he was faced at the time," but added that, even if counsel were ineffective for failing to present mitigation, a different approach would not have changed the outcome. Responding to the State's and Defendant's joint plea to make the sentences concurrent, the court reiterated that concurrent sentences were "a discount," and stated:

> What was offensive was the fact that the prosecution brought all these people in and subjected them to a reliving of their own agony for the prosecution's purposes, then said, well, we'll throw it all away. I didn't mind taking the time. I'm not offended by the number of counts. What is sort of startling was that the State used all these people and treated them as chattels, as indeed, Mr. Fillmore [and] his team did, and now says to me, "Well, fix it."
>
> . . . .
>
> I did not think that a sentence totaling this one was what I was doing. I looked at each case. There was a conviction on each case. A jury had voted on each case. The jury was told that each case was important ... and it did work hard ..., and I was being asked by the prosecution to disregard all that had been done by the jury and all that had been done by the victims.
>
> . . . .

[Y]ou had a trial judge upset with the prosecution which at the end of the case decided that it didn't want what it had asked for and asked the judge to come to its rescue, but left the judge hanging with a score or so of victims who were looking to the judge for relief.

. . . .

The sentencing was a product of what the State ended up accomplishing.

The trial court denied, however, that it had imposed consecutive sentences because it was "upset with the prosecution," and stated that A.R.S. § 13–708 expresses a presumption that sentences should be pronounced consecutively.

### A. Ineffective Assistance at Sentencing

■ Before turning to the dispositive issue of abuse of sentencing discretion, we examine two preliminary issues, the first of which concerns the sentencing assistance of trial counsel. The State concedes that defense counsel was ineffective at sentencing. We agree. When the trial court announced its intention and counsel responded only, "You're going to do what you want anyway," this was not advocacy; it was absence. Although counsel may have correctly assessed the trial court as insusceptible to persuasion, some effort was required. We do not dispose of the sentence on the grounds of ineffective assistance, however, because we accept the trial court's conclusion that a different approach would not have changed the outcome. Because effective assistance would not have made a difference, its absence is no ground for post-conviction relief. *See State v. Lee*, 142 Ariz. 210, 219, 689 P.2d 153, 162 (1984).

### B. A.R.S. § 13–708

A second preliminary issue concerns the trial court's reliance, in partial explanation of its sentence, on a legislative presumption "that sentences should be pronounced [consecutively]."[7] A.R.S. § 13–708 directs:

---

6. Although the State defended the sentence on direct appeal, it subsequently joined the Defendant in requesting concurrent sentences in the post-conviction relief proceedings. The State has not responded to Defendant's petition for review.

7. Although the trial court actually referred to a legislative preference for concurrent sentences, it is clear from the context that the court misspoke and intended to say that the legislative change favors consecutive sentences.

Except as otherwise provided by statute, if multiple sentences of imprisonment are imposed on a person at the same time, ... the sentence or sentences imposed by the court shall run *consecutively* unless the court expressly directs otherwise, in which case the court shall set forth on the record the reason for its sentence.

(Emphasis added.) The legislature changed "concurrently" to "consecutively" in 1985. Laws 1985, ch. 364, § 9, eff. May 16, 1985.

The trial court interpreted the 1985 amendment to § 13–708 as a legislative reversal of preference from concurrent to consecutive terms. This court, however, had found, in interpreting the earlier version of that statute, that it did not "create a 'statutory preference' for concurrent sentences." *State v. Van Alcorn,* 136 Ariz. 215, 219, 665 P.2d 97, 101 (App.1983). Treating the statute, as then written, as providing merely a default designation where the trial court failed to specify its choice, the court concluded that the statute did not constrict to any degree the trial court's discretion to impose consecutive sentences for the defendant's crimes. *Id.*

■ Just as the pre-amendment version of § 13–708 did not diminish the trial court's discretion to impose consecutive sentences, neither does the 1985 amendment diminish the trial court's discretion to impose concurrent sentences. Under both versions of the statute, a trial court must choose, among concurrent and consecutive sentences, whichever mix best fits a defendant's crimes. In this light, we turn to the sentences that this trial court chose.

### C. Abuse of Discretion

■ As a general rule, "sentencing is the responsibility of the trial judge and, absent an abuse of discretion, the sentence will not be altered." *State v. Mincey,* 141 Ariz. 425, 445, 687 P.2d 1180, 1200 (1984). If, however, the trial court "in effect refuses to exercise its discretion," there is no reason for the appeals court to defer to the trial court's

judgment. *United States v. Wardlaw,* 576 F.2d 932, 938 (1st Cir.1978); *see also Woosley v. U.S.,* 478 F.2d 139, 144 (8th Cir.1973). We have reviewed the sentences in this light.

■ Defendant was thirty-one years old on the date of sentencing. His prior criminal record consisted of three convictions: one in 1978 for a misdemeanor assault; one in 1980 for an aggravated assault, which was designated as a misdemeanor on completion of probation; and one in 1988 for trafficking in stolen property, for which Defendant was serving on probation at the time of these offenses. Although the State recognized that "the defendant's exposure in this matter is in the range of 400 years," it recommended concurrent sentences that would subject Defendant to 15.75 years "flat" time. Instead, the trial court sentenced Defendant to 289.75 years. A gross discrepancy between the sentence recommended by the State and the sentence imposed by the court does not prove abuse of discretion. But it does serve as evidence of abuse of discretion. *See Wardlaw,* 576 F.2d at 938. Against the backdrop of that evidence, we examine the trial court's rationale.

■ Although trial courts possess broad discretion to sentence defendants within statutory limits, a reviewing court may find abuse of discretion when the sentencing decision is arbitrary or capricious, or when the court fails to conduct an adequate investigation into the facts relevant to sentencing. *State v. Stotts,* 144 Ariz. 72, 87, 695 P.2d 1110, 1125 (1985). Six federal circuits have found abuse of discretion when lower courts have imposed sentences determined by inflexible, mechanical processes.[8]

■ At the initial sentencing the trial court explained that it was not imposing concurrent sentences, as the State had recommended, because it would not "pretend that [Defendant] was guilty of one [offense] and throw the rest away." The court stated, "each of these victims has suffered," and "each one of these activities is separate and

---

**8.** *See United States v. Barker,* 771 F.2d 1362 (9th Cir.1985); *United States v. Brown,* 723 F.2d 826 (11th Cir.1984); *United States v. Wardlaw,* 576 F.2d 932 (1st Cir.1978); *United States v. Hart-* ford, 489 F.2d 652 (5th Cir.1974); *Woosley v. United States,* 478 F.2d 139 (8th Cir.1973); *United States v. Daniels,* 446 F.2d 967 (6th Cir.1971).

should not be given a quantity discount." The court acknowledged that its one-consecutive-sentence-per-victim approach resulted in an "extravagant" sentence; yet the court proceeded as if this extravagant sentence were the consequence of the State's charges, not the court's own choice.

During the PCR hearing, the trial court characterized the prosecution's decision to call so many victims as witnesses "a mistake." It described the sentence as "plainly appropriate under the law," but said, "I did not think that a sentence totaling this one was what I was doing." And the court stated that the "mass of convictions" had resulted in "a total sentence which was not [the court's] goal." Instead, "[the court's] goal was simply to respond to each one of the crimes that [Defendant] committed on a per basis."

The court's application of the premise that each victim was entitled to a separate, consecutive sentence resembles in its rigidity the disfavored approach of imposing maximum sentences for certain classes of crimes. *See, e.g., Hartford,* 489 F.2d at 655 (a sentencing judge abuses his judicial discretion when he "pursue[s] a rigid policy of imposing the maximum sentence for a particular category of offenses"). The court's unbending application of this premise, even in the face of an admittedly extravagant sentence, was a clear abuse of discretion.

Indeed, the court's sentence is more aptly characterized as a refusal to exercise discretion. And a refusal to exercise the sentencing discretion provided by the legislature is, in and of itself, an abuse of discretion. The legislature by statute, the prosecutor by charge, and the jury by conviction set the sentencing boundaries for the judge. But within those boundaries, "the ultimate re-sponsibility for fitting the punishment to the circumstances of the particular crime and individual defendant still rests with the judiciary." *State v. Thurlow,* 148 Ariz. 16, 19, 712 P.2d 929, 932 (1986). Repeatedly attributing its cumulative sentence in this case to the prosecutor's charging decision, the court neglected to recognize that the choice of sentence was not the prosecutor's responsibility but its own. Because the trial court abandoned that responsibility, we set its sentences aside.

Defendant asks this court to reduce his sentence as excessive under A.R.S. § 13–4037(B). This statutory power must be exercised with great caution. *State v. Stanley,* 123 Ariz. 95, 107, 597 P.2d 998, 1010 (App. 1979). Because of the complex nature of this case and the numerous convictions, we conclude that resentencing should be conducted in the superior court.

## VI. CONCLUSION

For the reasons stated above, we remand Defendant's petition for post-conviction relief for an evidentiary hearing on the question of ineffective assistance of trial counsel. If, after that hearing, Defendant is awarded a new trial, sentencing issues will be moot. If Defendant is not awarded a new trial, he must be resentenced.

JACOBSON, P.J., and NOYES, J., concur.